**UNITED STATES of America,**
**Appellee,**

**v.**

**Leroy S. OUTEN; Rodney D. Smith; Sheldon Wilford; Donald Gordon; Euton Christian; Tyrone McFadden, Defendants,**

**Herbie Noel, aka "Wayne",**
**Defendant–Appellant.**

**Docket No. 97–1103.**

United States Court of Appeals, Second Circuit.

Argued March 13, 2001.

Decided April 12, 2002.

David I. Schoen, Montgomery, AL, for the appellant.

Susan Corkery, Assistant United States Attorney, Brooklyn, NY (David C. James, Stephen C. King, Assistant United States Attorneys, on the brief), for Loretta E. Lynch, United States Attorney for the Eastern District of New York, for the appellee.

Before: McLAUGHLIN and SOTOMAYOR, Circuit Judges, and BERTELSMAN, District Judge.*

* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

SOTOMAYOR, Circuit Judge.

Defendant Herbie Noel appeals from a judgment of conviction entered by the United States District Court for the Eastern District of New York (Frederic Block, *Judge*) on two counts of possession of marijuana with intent to distribute, for each of which defendant was principally sentenced to 60 months' imprisonment, and one count of conspiracy to possess with intent to distribute marijuana, for which he was sentenced principally to 110 months' imprisonment, all sentences to run concurrently. The indictment did not charge, nor did the jury find, either the quantity of marijuana involved in any of the counts or whether the defendant received any remuneration in connection therewith. Defendant's appeal presents two important questions arising from the Supreme Court's landmark decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and this circuit's application of that decision to the principal federal narcotics statute, 21 U.S.C. § 841. First, defendant lodges a facial challenge to the constitutionality of § 841 on the ground that the statute impermissibly (in light of *Apprendi*) removes findings of drug quantity from juries and that there is no permissible saving construction of the statute. Second, defendant argues that, even if constitutional, the "default" provision for marijuana possession—i.e., the statutory provision which sets the maximum term of imprisonment to which a defendant may be sentenced absent an indictment and jury finding as to quantity—is the one-year maximum term found in 21 U.S.C. § 841(b)(4), not the five-year term prescribed in § 841(b)(1)(d). We reject defendant's challenge to § 841's constitutionality and find that the "default"

provision for marijuana is the five-year term of § 841(b)(1)(d). We further agree with the government that any resulting error in the 110 month sentence for the conspiracy count did not affect defendant's substantial rights because it did not affect his overall term of imprisonment. We therefore affirm the judgment of the district court.

## BACKGROUND

Defendant Noel was an employee of the Port Authority of New York and New Jersey (the "Port Authority"), which has primary responsibility for the operation of the three major airports serving New York City, including John F. Kennedy Airport ("JFK"). Defendant worked for the Port Authority at JFK, and by virtue of his position with the Port Authority he had access to certain restricted areas of the airport, including areas from which luggage arriving on international flights could be retrieved without subjecting it to scrutiny by the United States Customs Service. The government alleged that defendant used this position to smuggle shipments of narcotics into the United States.

Defendant was prosecuted pursuant to a superseding indictment, dated September 11, 1995, which charged him with six counts, to all of which he pled not guilty: one count of conspiracy to distribute and to possess with intent to distribute cocaine; two counts of attempting to possess with intent to distribute cocaine; one count of conspiracy to distribute and to possess with intent to distribute marijuana; and two counts of distribution and possession with intent to distribute marijuana. Defendant was acquitted after a jury trial on the three cocaine-related counts; this appeal concerns, and reference will be made, only to the remaining three marijuana-related counts. None of the counts alleged any quantity of marijuana involved in the offenses nor any fact related to remuneration. However, the parenthetical statutory references following each count referenced specific penalty provisions: on the conspiracy count, § 841(b)(1)(B)(vii) (the five-to-forty-year provision for offenses involving 100 kilograms or more of marijuana), and on the two distribution/possession counts, § 841(b)(1)(D) (the five-year maximum provision for less than 50 kilograms of marijuana).

Trial commenced on November 7, 1995. The government's case was based largely on the testimony of two cooperating defendants, Rodney Smith and Donald Gordon, both of whom were baggage handlers employed by Triangle Aviation Services. Both men testified to several occasions between 1990 and their arrest in 1994 when allegedly they retrieved suitcases full of marijuana at JFK, bypassed Customs, and delivered the suitcases to Noel in exchange for payment. The government introduced corroborating evidence in the form of phone and pager records detailing various phone calls and pages among the defendants. Smith and Gordon were arrested after an undercover agent arranged with them to recover shipments of cocaine at JFK in a like manner, and they implicated Noel in both the cocaine and marijuana shipments.

The jury returned verdicts of guilty on the marijuana counts on November 22, 1995. The defendant did not request, and the jury was not charged, to determine the amount of marijuana involved in any of the offenses.

Prior to sentencing, defendant expressed his dissatisfaction with his trial attorney and acquired new counsel. At sentencing on January 10, 1997, defendant contested not only the evidence of the quantity of marijuana involved in the conspiracy but also the standard to be applied, arguing that at least as to uncharged conduct the court should apply a higher standard than preponderance of the evidence,

given the significant effect it could have on the overall sentence. (Sent. Tr. 5–6.) Although the district court (and, indeed, defense counsel) recognized that this argument had largely been rejected by this circuit,[1] the district court erred on the side of caution and found beyond a reasonable doubt that the conspiracy involved at least 189.6 kilograms of marijuana, resulting in a base offense level of 26 under U.S.S.G. § 2D1.1. (Sent. Tr. 28–29.) (The district court found the two substantive counts involved 25.8 and 20 kilograms, respectively.) Applying a four-level enhancement for the defendant's supervisory role under U.S.S.G. § 3B1.1(a), the district court sentenced the defendant principally to 110 months' imprisonment—slightly above the midpoint of the applicable Guideline range.[2] The district court also imposed a $60,000 fine. Judgment was entered on February 19, 1997, and defendant filed a notice of appeal that same day.

On April 8, 1997, defense counsel filed a motion in this Court requesting a 60–day extension of time in which to file defendant's initial brief (which was due on April 17). The moving papers stated the reason for seeking the extension as the difficulty appellate counsel had in obtaining the case file from trial counsel, but also stated as follows:

> Additionally, the Appellant anticipates filing a motion in the District Court pursuant to 28 U.S.C. Sec. 2255 within

the next few weeks. Granting the requested enlargement of time would enable us to determine whether this case can be resolved through such a motion in the District Court. In the event the Sec. 2255 motion is denied, a consolidated appeal would be the most expeditious manner in which to resolve all issues in this case. That would be possible by granting the requested 60 day enlargement of time.

The supporting affidavit of appellate counsel stated further that

> [i]t is our view that, in the event we are not successful in the trial court on the § 2255 petition, the most efficient and expeditious course of action in this case would be a consolidation of the direct appeal with the appeal from a denial of the § 2255 petition, thereby enabling all issues to be resolved one way or the other in one forum at one time. Obviously, if we are successful with the § 2255 motion, we would move to dismiss the appeal and we would not need to burden this Court.
>
> We plan to file Mr. Noel's § 2255 petition within the next four weeks. The issues involved are not complex and we should be able to arrive at a resolution of the issues within a short time frame. Indeed, it is our hope that we can resolve those issues within a time frame that would enable us to meet the

---

1. In *United States v. Gigante*, 94 F.3d 53 (2d Cir.1996), this Court stated that the preponderance standard was appropriate for determining the threshold applicability of upward adjustments based on uncharged or acquitted conduct, although we also stated that where multiple adjustments, each based on a mere preponderance, resulted in a significant upward adjustment, "a sentencing judge should require that the weight of the factual record justify a sentence within the adjusted Guidelines range" and depart downwardly if the record did not so justify. *Id.* at 56. Although, because the evidence of uncharged

conduct in *Gigante* was deemed "overwhelming," *id.*, this discussion was arguably only well-considered dicta, we have consistently followed it and its status as a holding of this Circuit is now secure. *See United States v. Norris*, 281 F.3d 357, 361–62 (2d Cir.2002); *United States v. Cordoba Murgas*, 233 F.3d 704, 708 (2d Cir.2000) (reviewing post-*Gigante* case law).

2. Defendant fell within Criminal History Category I, resulting in a Guideline range of 97 to 121 months.

briefing schedule as extended pursuant to this motion. In the event we are not successful with the § 2255 petition, we would immediately move to consolidate the appeal.

This Court granted defendant a 30-day extension on April 11, 1997. The order granting the extension contained a hand-written notation by a staff attorney of the Court that "[p]arties could stipulate to withdraw appeal pending resolution of sec. 2255 motion."

On May 14, 1997, the Court received from defendant a stipulation which stated that the appeal would be "removed from the docket." On May 28, defendant's counsel wrote to the Court to "confirm" a telephone conversation he had apparently had with a representative of the Clerk of the Court. According to defense counsel's letter, the Clerk's office had informed him that the stipulation needed to state that the appeal was being "withdrawn," and that the stipulation required the defendant's signature authorizing the withdrawal. In the letter, counsel authorized the Court to alter the stipulation to read "withdrawn," assured the Court that a statement of authorization from defendant would be forthcoming shortly, and also stated that

> As we discussed, and as the stipulation provides, the point is that we have agreed to stay the appeal pending a resolution before the trial court of a motion under 28 U.S.C. § 2255, with the idea that a consolidated appeal would better serve the interests in judicial economy. So, while we are withdrawing the appeal now, it is with the right to reinstate it, if necessary, following a decision by the trial court on Mr. Noel's petition.

No letter of approval from defendant was forthcoming, however, and on June 16, 1997, this Court ordered the defective stipulation stricken from the docket for failure to comply with the signature requirement of Fed. R.App. P. 42(b) and then dismissed the appeal for failure of defendant to file his appellant's brief within the extended time allotted. The letter was accompanied by directions from the Clerk stating that, if it had been the defendant's intention to withdraw the appeal, a signed stipulation along with a request to reinstate the appeal and a motion to file out of time were required to be submitted within twenty days. On June 24, 1997, defense counsel wrote to a staff attorney of this Court detailing his efforts to obtain defendant's signature and explaining that difficulty with the prison mail system had caused the delay. The letter also asked the staff attorney to "please advise as to the procedure for removing the default and reinstating the appeal so that we can have it withdrawn instead pursuant to our Stipulation, with leave to prosecute the appeal, if necessary, after we litigate the § 2255 motion in the district court." On July 9, 1997, defendant filed a motion to reinstate his appeal and for permission to file a withdrawal stipulation out of time; on July 11, this Court granted the motion "only to the extent that the appeal is reinstated."

This Court received from defendant a revised stipulation to withdraw his appeal, executed by all parties, on July 28, 1997. The stipulation stated, in its entirety, as follows:

> IT IS HEREBY STIPULATED by and between the parties, subject to the approval of the Court, that the appeal of Herbie Noel be withdrawn upon the following conditions:
>
> 1. that within 10 days of notice of the decision of the District Court on appellant's 28 U.S.C. § 2255 motion, appellant shall move to restore this appeal to the calendar; and
>
> 2. that within fourteen (14) days of said restoring of the appeal to the calen-

dar, appellant's brief and appendix shall be served on appellee and filed with the Court.

The stipulation was signed for the Court by a staff attorney and filed on July 30, 1997.

Despite defense counsel's representations that a § 2255 motion would be filed "within a few weeks" and his professed hope that the resolution of that motion might even precede completion of briefing of the appeal, defendant did not file his § 2255 motion until some two and one-half years later, on December 1, 1999. The district court denied both the motion and, *sua sponte,* a Certificate of Appealability ("COA"), on August 4, 2000; the order denying the motion was entered on the district court docket sheet on August 8 along with a notation that copies were mailed to counsel by Judge Block's chambers. Subsequently, on August 21, the clerk of this Court received a letter from defendant's counsel, dated August 18, which stated as follows:

> On July 30, 1997, as to Appellant Herbie (Wayne) Noel, the above-referenced appeal was suspended and held in abeyance pending the prosecution of a motion in the district court under 28 U.S.C. § 2255 in the case. I have just received notice by mail that on August 4, 2000, the district judge entered an order denying Mr. Noel's motion under § 2255. Accordingly, the appeal is now due to be reinstated and a briefing schedule can now be set for the direct appeal.
>
> It is not clear to me exactly how to proceed most efficiently. The purpose of the suspension of the appeal was to allow all of the issues to be consolidated in one vehicle to avoid excess litigation. However, it would appear that Mr. Noel will need to file a separate notice of appeal within 60 days of August 4, 2000, and pursue the certificate of appealability process as to the § 2255 motion (the

district court denied a certificate of appealability as part of the order, thereby making the matter ripe for Mr. Noel to seek the certificate from this Court); while this direct appeal is ready to proceed. I would appreciate any thoughts on the matter. If they can still be consolidated that would seem to be helpful all around, although I cannot, of course, speak for government counsel.

A reinstatement order was issued by the clerk of this Court on September 19, 2000, which stated that "[a]n order withdrawing the appeal of defendant-appellant, HERBIE NOEL, having been entered on 7/30/97 and the counsel for the defendant-appellant having filed the necessary papers, upon consideration thereof; it is ORDERED that the appeal be, and it hereby is reinstated." The remainder of the procedural history before this Court is of no significance to this appeal.

### DISCUSSION

#### I. *Appellate Jurisdiction*

We first address two issues of this Court's jurisdiction. The first question—which we raise *sua sponte* in furtherance of our obligation to assess our own jurisdiction at the outset of every appeal, *see Goldberg v. Cablevision Sys. Corp.,* 261 F.3d 318, 323 (2d Cir.2001)—is whether we have jurisdiction over defendant's direct appeal from his judgment of conviction. The second, urged by the government, is whether we have jurisdiction to review the denial of his § 2255 motion attacking that conviction.

#### A. *The Direct Appeal*

■ Our concern over our jurisdiction on the direct appeal arises from the fact that, on its face, we have a voluntary withdrawal of an appeal by defendant followed by a request to "reinstate" the appeal some three and one-half years after entry

of the judgment appealed from—well beyond the ten days for appeal allowed by Fed. R.App. P. 4(b). Were this any other issue besides the timeliness of the appeal, we might ignore this apparent procedural irregularity and proceed directly to the merits, on the ground that any procedural error—if indeed there was any—was implicitly both invited and approved by this Court. However, not only are the time limits of Fed. R.App. P. 4 "mandatory and jurisdictional," *United States ex rel. McAllan v. City of New York*, 248 F.3d 48, 51 (2d Cir.2001) (internal quotation marks omitted), *cert. denied,* — U.S. —, 122 S.Ct. 1301, 152 L.Ed.2d 212 (2002), these time limits are the one procedural area which courts of appeal are expressly forbidden from altering or suspending in an individual case, *see* Fed. R.App. P. 2. We therefore must address the issue of our jurisdiction.[3]

We begin by noting that we approved the procedure followed here—withdrawal of a direct appeal of a conviction followed by "reinstatement" of the appeal upon the district court's decision on a § 2255 motion directed to that conviction—in *United States v. Hernandez*, 5 F.3d 628 (2d Cir. 1993). The defendant in *Hernandez* simultaneously filed both a notice of appeal from his conviction and a § 2255 motion.

On motion to this Court, we granted the defendant's request to withdraw the appeal "without prejudice to reinstatement by written notice to the Clerk of the Court within 10 days of the District Court's decision on the § 2255 motion." *Id.* at 631. After the district court denied the motion, we concluded that we had jurisdiction to review, as a direct appeal, the district court's denial of defendant's motion to suppress certain evidence in the criminal case:

> We conclude that we have jurisdiction to consider Hernandez's claim that the district court improperly denied his suppression motion. Hernandez timely filed his notice of appeal for his direct appeal. We granted his motion for withdrawal of his direct appeal without prejudice, and he complied with our instructions for reinstatement of his appeal. Therefore, the suppression issue is properly before us.

*Id.* (footnote omitted). We did not, however, further explain the basis for our jurisdiction, nor, apparently, was any question of the consistency of this practice with Fed. R.App. P. 4 brought to our attention. The power of this Court to reinstate a voluntarily withdrawn appeal at any time—a power perhaps conditioned on compliance with certain prerequisites (e.g.,

---

**3.** We assume for these purposes that defendant's request to reinstate this appeal complied with the terms of the stipulation of withdrawal, i.e., that he "moved to restore this appeal" "within 10 days of notice of the decision of the District Court on appellant's 28 U.S.C. § 2255 motion." We note, however, that this is so only by giving defendant the benefit of several assumptions: (1) that counsel's letter did service as a "motion," despite its failure to comply with Fed. R.App. P. 27; (2) that the otherwise ambiguous term "notice" means "service of notice" rather than actual notice (which defense counsel has never stated to this Court, by affidavit or otherwise); (3) that the district court served notice of the order of denial on the date of entry of the order (August 8) rather than the date

Judge Block signed it (August 4)—even though the docket noted that copies were mailed to counsel by chambers, not by the clerk; and (4) that the three-day extension of time for mailing under Fed. R.App. P. 26(c) is applicable. We take this opportunity to caution counsel that basing a time limit in a stipulation on an undefined and indefinite term such as "notice" not only invites pointless collateral litigation over whether the terms of the stipulation have been met but risks adverse consequences should a court not accept counsel's assumptions. It is, of course, in part to eliminate uncertainty that the Federal Rules of Appellate Procedure specify that the critical time to appeal runs from "entry" of the judgment or order appealed from. *See* Fed. R.App. P. 4.

a time period within which to request reinstatement) [4]—seems to have been assumed.

We need not test that assumption here because, despite its label, the stipulation "withdrawing" the appeal was not, in fact, a withdrawal. In determining the proper procedural treatment of a paper filed with the Court, we have consistently eschewed reliance on the denomination given it by a party in favor of examining its purpose or function. *See McAllan*, 248 F.3d at 52 (treating motion for reconsideration under district court local rule as a motion under Fed.R.Civ.P. 59(e) for purposes of tolling the time to file notice of appeal); *cf. Smith v. Barry*, 502 U.S. 244, 248–49, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) (courts must look to see whether paper filed is the "functional equivalent" of a notice of appeal in order to assess compliance with Fed. R.App. P. 3).

A withdrawal of an appeal is an expression of the intent of the parties (principally, of course, the appellant) not to pursue the appeal any further and brings the appeal to an end.[5] Defendant here, however, clearly never intended to abandon his direct appeal. Indeed, he initially requested an extension of time to file briefs—effectively holding the appeal in abeyance—pending the § 2255 motion, and he submitted the stipulation that the appeal be "withdrawn" apparently only because of the suggestion of a staff attorney that he do so and, more importantly, the refusal of the clerk's office to accept anything else. Defendant's correspondence with this Court continually referred to the direct appeal as being in "suspension" or "abeyance." Moreover, there is no indication that the government or this Court understood this to be the end of the appeal. We, therefore, will consider the stipulation of withdrawal filed with and signed by this Court as a motion to hold the appeal in abeyance and a grant of that motion—a power we unquestionably have under the Federal Rules of Appellate Procedure.[6] Thus, the jurisdiction over the direct appeal which vested in this Court upon defendant's filing of the notice of

---

4. We say "perhaps" because one possible reading of the quoted portion of *Hernandez* is that we treated compliance with the terms of the withdrawal stipulation as a *jurisdictional* prerequisite.

5. Thus, for example, "a notice of appeal filed and dismissed voluntarily is gone, no more effective in conferring jurisdiction on a court than a notice never filed." *Barrow v. Falck*, 977 F.2d 1100, 1103 (7th Cir.1992).

6. Holding an appeal "in abeyance" in this case (as in most) amounted to nothing more than an extension of time for filing of the appellant's brief. Courts of appeal are expressly allowed to extend any time limit except for, as noted above, the time to file a notice of appeal. Fed. R.App. P. 26(b).

We note that by holding the appeal in abeyance pending the resolution of the § 2255 motion, the one-year limitations period prescribed by AEDPA never began (indeed has not yet begun) to run. The effect of that abeyance, coupled with the inexplicably long period of time which defendant took to file his § 2255 motion, enabled defendant to bring his § 2255 motion some two and one-half years after his conviction—probably, although by no means certainly, later than he would have been able to had the appeal proceeded forthwith. Our concern in this case, however, is only with our jurisdiction; the wisdom, in light of AEDPA, of granting a request to hold an appeal in abeyance pending the filing of a § 2255 motion is a question to be considered as those requests arise in the future. Whether to condition such a stay, if granted, on the expeditious filing of a proposed motion would undoubtedly be part of any future consideration of this issue. *Cf. Zarvela v. Artuz*, 254 F.3d 374 (2d Cir.2001)(holding that district courts should condition stays of mixed habeas petitions on petitioner's initiation of state exhaustion proceedings within a limited period), *cert. denied sub nom. Fischer v. Zarvela*, —— U.S. ——, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001).

appeal in February 1997 has remained with this Court throughout.[7]

■ Finally, this construction of our own jurisdiction does not call into question the district court's adjudication of the § 2255 motion, because there is no *jurisdictional* bar to a district court's adjudication of a § 2255 motion during the pendency of a direct appeal. *See DeRango v. United States*, 864 F.2d 520, 522 (7th Cir. 1988); *United States v. Taylor*, 648 F.2d 565, 572 (9th Cir.1981); *Womack v. United States*, 395 F.2d 630, 631 (D.C.Cir.1968). Any concern over such a practice is one of judicial economy and the concern that the results on direct appeal may make the district court's efforts on the § 2255 motion a nullity. *Cf. United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir.1996) ("The divestiture of jurisdiction rule ... is a judicially crafted rule rooted in the interest of judicial economy, designed 'to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.'") (quoting *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir.1989)). The district court therefore had jurisdiction to decide defendant's § 2255 motion.

### B. *The § 2255 Motion*

The government nonetheless contends that we have no jurisdiction to review the district court's denial of defendant's § 2255 motion because (1) defendant filed no notice of appeal from the denial order and (2) no COA was granted, as required by 28 U.S.C. § 2253. We disagree with the government on the first point but concur on the second.

■ We start by noting that we specifically held in *Hernandez* that a notice of appeal is required to bring the denial of a defendant's § 2255 motion before this

Court; defendant cannot rely on our jurisdiction over the direct appeal. *See Hernandez*, 5 F.3d at 631–32; *see also United States v. Means*, 133 F.3d 444, 449–50 (6th Cir.1998). In an attempt to evade the clear mandate of *Hernandez*, defendant raises several arguments as to why communications with this Court's staff led counsel to believe that, *Hernandez* notwithstanding, no notice of appeal from the district court's § 2255 denial was necessary. For example, defense counsel claims that, having asked in the August 18 reinstatement letter to the Court how best to proceed with the § 2255 appeal, and having received no answer, he assumed that the September 19 order reinstating the direct appeal *was* the answer—i.e., that its reference to "having filed the necessary papers" indicated no further paperwork was necessary for the appeal of the § 2255 motion despite its patently clear reference to the direct appeal. Our overriding response to this argument is that not only did this Court's staff say nothing which could be remotely construed as indicating that no notice of appeal was necessary, even if they had our staff have no more power to overrule our precedent than this panel does. Our staff attorneys and clerk's office are extraordinarily helpful, but they are not charged with performing counsel's legal research for them. Nor, as urged by defendant, do we have the equitable power to excuse compliance with Fed. R.App. P. 3's requirement of the filing of a notice of appeal, even if the equities were in his favor. *See Smith*, 502 U.S. at 248, 112 S.Ct. 678 ("Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review.").

■ It is undisputed that defendant filed no formal notice of appeal with the

---

7. Without expressing any opinion on or limiting the basis for our holding in *Hernandez*, we note that the construction we apply here would suffice equally well to support our finding of jurisdiction in that case.

district court from the denial of his § 2255 motion. The inquiry does not, however, end there; we must determine whether he filed any paper which can be reasonably construed as the "functional equivalent" of a notice of appeal. *Id.; Haugen v. Nassau County Dep't of Social Servs.,* 171 F.3d 136, 138 (2d Cir.1999); *Means,* 133 F.3d at 448. In order to suffice as a notice of appeal, a paper must (1) "specify the party or parties taking the appeal," (2) "designate the judgment, order, or part thereof appealed from," (3) "name the court to which the appeal is taken," and (4) "specifically indicate the litigant's intent to seek appellate review." *Haugen,* 171 F.3d at 138 (internal quotation marks omitted).

We find that the August 18 letter from defense counsel requesting reinstatement of the direct appeal suffices as a notice of appeal from the denial of defendant's § 2255 motion as well. The letter was, first of all, timely, having been received by this Court within sixty days of the date on which the order appealed from was entered on the district court docket sheet.[8] The reinstatement letter's discussion of how best to consolidate an appeal of the § 2255 motion with the direct appeal specifies the party, order, and court involved in the appeal; the only question is whether it sufficiently evinces a definite intent to appeal. There would be little reason for defendant's counsel question as to how to consolidate the appeals if there were to be nothing to consolidate—i.e., no appeal on the § 2255 motion. We have previously held that intent to appeal may be inferred from a letter questioning how to proceed with an appeal. *See Grune v. Coughlin,* 913 F.2d 41, 43 (2d Cir.1990). True, *Grune* involved a *pro se* appellant, but we find the inference no less valid here. Under the circumstances, we believe that there could be no genuine doubt as to defendant's intent to appeal the denial of his § 2255 motion and that the letter sufficed to put the other parties and this Court on notice of that intent.[9] *See Haugen,* 171 F.3d at 138 (requiring indication of intent to appeal "ensure[s] that the filing provides sufficient notice to other parties and the courts") (quoting *Smith,* 502 U.S. at 248, 112 S.Ct. 678); *cf. Becker v. Montgomery,* 532 U.S. 757, 121 S.Ct. 1801, 1808, 149 L.Ed.2d 983 (2001) (excusing lack of signature on notice of appeal on ground that "imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court"). We therefore deem the reinstatement letter as a notice of appeal from the district court's order denying defendant's § 2255 motion.

■ Our jurisdictional inquiry has one more step, however, and that is defendant's failure to secure a COA, as required

---

**8.** Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts specifies that the time limits for appeal from a § 2255 motion are governed by the provisions of Fed. R.App. P. 4(a) respecting civil appeals, not the criminal provisions of Rule 4(b).

The fact the letter was filed with this Court, rather than the district court, is not fatal to the appeal. *See* Fed. R.App. P. 4(d) (notice of appeal filed with court of appeals is "considered filed in the district court on the date" received in the court of appeals); *Smith,* 502 U.S. at 249, 112 S.Ct. 678 (construing brief filed in court of appeals as notice of appeal on authority of Rule 4(d)).

**9.** This result is in no way inconsistent with *Hernandez.* The defendant there, in requesting to reinstate his direct appeal, made no reference to appealing the denial of his § 2255 motion other than to attach a copy of the denial order to his letter. *Hernandez,* 5 F.3d at 631. Because reinstatement of the direct appeal was conditioned on filing a request within ten days of the § 2255 decision, the attachment of the denial order indicated nothing more than the timeliness of that request.

by 28 U.S.C. § 2253(c). The district court denied a COA and defendant presented no request for a COA to this Court as permitted by Fed. R.App. P. 22(b). Having construed the August 18 letter as a notice of appeal, however, we will also construe it as a request for a COA. *See* Fed. R.App. P. 22(b)(2) ("If no express request for a certificate is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals."); *Hooper v. United States,* 112 F.3d 83, 88 (2d Cir.1997); *Lozada v. United States,* 107 F.3d 1011, 1017 (2d Cir.1997). Defendant having briefed the denial of his § 2255 motion on the merits, he has been "afford[ed] ... the opportunity to make the 'substantial showing of the denial of a constitutional right' " required by 28 U.S.C. § 2253(c)(2). *Lozada,* 107 F.3d at 1017; *see Hooper,* 112 F.3d at 88 (denying COA on the basis of the appellate briefing). On the basis of that briefing, and for substantially the reasons stated by the district court,[10] we deny the request for the COA and dismiss the appeal from the denial of defendant's § 2255 motion.

## II. *The Constitutionality of 21 U.S.C. § 841 After* Apprendi

▉▉▉▉ We now turn to the merits of defendant's direct appeal. Defendant attacks his convictions and sentence based on the intervening Supreme Court decision in *Apprendi,* benefit of which defendant receives because his conviction is still under direct review. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Because defendant did not raise any *Apprendi*-related objections below, however, we review his claims only for plain error. *See United States v. Thomas,* 274 F.3d 655, 666 (2d Cir.2001) (en banc). Our first task under the plain

error test is to determine whether there is any cognizable error at all. *See id.*

Defendant's first claim of error is that *Apprendi* renders 21 U.S.C. § 841 (and therefore § 846 as well) unconstitutional on its face, and therefore his *convictions,* not merely his sentence, must be vacated. We join every other circuit to have addressed this argument in rejecting it. *See United States v. Collazo–Aponte,* 281 F.3d 320, 324–25 (1st Cir.2002); *United States v. Buckland,* 277 F.3d 1173, 1178–83 (9th Cir.2002) (en banc); *United States v. Kelly,* 272 F.3d 622 (3d Cir.2001); *United States v. McAllister,* 272 F.3d 228, 232–33 (4th Cir.2001); *United States v. Cernobyl,* 255 F.3d 1215, 1218–19 (10th Cir.2001); *United States v. Martinez,* 253 F.3d 251, 256 n. 6 (6th Cir.2001); *United States v. Brough,* 243 F.3d 1078, 1080 (7th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 203, 151 L.Ed.2d 144 (2001); *United States v. Slaughter,* 238 F.3d 580, 582 (5th Cir. 2000), *cert. denied,* 532 U.S. 1045, 121 S.Ct. 2015, 149 L.Ed.2d 1015 (2001); *see also United States v. Candelario,* 240 F.3d 1300, 1311 n. 16 (11th Cir.2001), *cert. denied,* 533 U.S. 922, 121 S.Ct. 2535, 150 L.Ed.2d 705 (2001).

The defendant in *Apprendi* was convicted of possession of a firearm with an unlawful purpose, a second-degree offense punishable under New Jersey law by a maximum of ten years' imprisonment. At sentencing, the trial judge applied a sentencing enhancement statute under New Jersey law which provided that, if the trial judge found by a preponderance of the evidence that a crime was motivated by racial bias, the maximum penalty for a second-degree offense was twenty years. *Apprendi,* 530 U.S. at 469–70, 120 S.Ct.

---

**10.** The district court denied defendant's § 2255 motion principally because, "in light of the abundance of evidence against him, Noel cannot show that but for his counsel's allegedly flawed representation, there is a reasonable probability that the result would have been different." Order of Aug. 4, 2000, at 2.

2348. The Supreme Court vacated the sentence, holding what it had only suggested before (in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)): that under the Due Process Clauses of the Fifth and Fourteenth Amendments and notice and jury trial guarantees of the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348.

We applied the teachings of *Apprendi* to 21 U.S.C. § 841 in *Thomas*. With respect to controlled substances, § 841 contains two subparts: § 841(a), entitled "Unlawful acts," which outlaws certain actions (manufacture, possession with intent to distribute, distribution, etc.) involving those substances; and § 841(b), entitled "Penalties," which lays out the terms of imprisonment which may be imposed for the unlawful acts of subsection (a). The ranges of possible prison terms increase in tiers from zero-to-twenty years through ten-years-to-life, depending on the quantity of controlled substance involved in the offense— the threshold quantity for each tier varying with the type of controlled substance involved.[11] (The variation from this scheme for marijuana will be discussed in more detail below.) In *Thomas*, we concluded that "if the type and quantity of drugs involved in a charged crime may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs, then the type and quantity of drugs is an element of the offense that must be charged in the indictment and submitted to the jury." *Id.* at 660. Because Thomas's sentence of 292 months exceeded the statutory maximum for an indeterminate amount of cocaine—namely, 240 months under 21 U.S.C. § 841(b)(1)(C)—and was based on a quantity of cocaine neither charged in the indictment nor proven to a jury beyond a reasonable doubt, we found constitutional error under *Apprendi* and vacated for re-sentencing to 240 months. *Id.* at 673.

■ Defendant's facial challenge to the constitutionality of § 841 is as follows: First, in light of *Apprendi*, it is no longer permissible to construe the threshold drug quantities of § 841(b) as "sentencing factors" to be determined by a judge rather than jury. Clearly, in light of *Thomas*, we agree with the opening premise. Second, defendant urges, if drug quantities are elements of offenses, then § 841(a) "is a disjointed criminal statute, which prescribes no penalty and which, therefore cannot constitutionally serve as the basis for a criminal conviction, in that it does not create a crime as a matter of law." We part company with defendant on this proposition.

■ First, as we made clear in *Thomas*, drug quantity becomes an "element of the offense" under § 841 only where "the type and quantity of drugs involved ... may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs." 274 F.3d at 660 & n. 3. Thus, an indictment today which charged a violation of § 841(a) and included no allegation of drug quantity would state a crime and be a perfectly valid

---

**11.** Thus, for example, a prohibited offense involving an undetermined amount of cocaine results in a prison term of zero to twenty years, § 841(b)(1)(C); one involving 500 grams or more results in a term of five to forty years, § 841(b)(1)(B)(ii); and one involving 5 kilograms or more results in a term of ten years to life imprisonment, § 841(b)(1)(A)(ii). The threshold quantities under §§ 841(b)(1)(A) and (B) for crack cocaine, on the other hand, are 5 grams and 50 grams, respectively. §§ 841(b)(1)(A)(iii) and (B)(iii).

indictment. Moreover, contrary to defendant's suggestion, there is a prescribed penalty for such a crime: the provisions of § 841(b) which prescribe a penalty for an indeterminate quantity of drugs, i.e., for most controlled substances, § 841(b)(1)(C). (The determination of the provision for an indeterminate amount of *marijuana* is addressed below.)

Second, we see no constitutional problem presented by the government's charging drug quantities that support penalties greater than those of the provisions relating to indeterminate amounts—i.e., those instances where drug quantities become elements of the offense. True, in such a situation § 841(a) no longer presents the *entire* offense; one element of the crime (drug quantity) is to be found in § 841(b) instead. Defendant offers, however, no persuasive reason why subsection (a) must stand alone, and we see none. We agree with the Seventh Circuit in *Brough* that "[i]t makes no constitutional difference whether a single subsection covers both elements and penalties, whether these are divided across multiple subsections (as § 841 does), or even whether they are scattered across multiple statutes." *Brough*, 243 F.3d at 1079. *See also Apprendi*, 530 U.S. at 495, 120 S.Ct. 2348 ("[M]erely because the state legislature placed its hate crime sentence 'enhancer' 'within the sentencing provisions' of the criminal code 'does not mean that the finding of a biased purpose to intimidate is not an essential element of the offense.'") (quoting *State v. Apprendi*, 159 N.J. 7, 731 A.2d 485, 492 (1999)).

To the extent that defendant is arguing that we cannot reconcile a construction of § 841 which requires drug quantity to be an offense element with Congress's intent to make drug quantity a sentencing factor,

we reject the argument. Simply put, Congress has expressed no such intent. It is true that we had previously held drug quantity to be a sentencing factor to be found by the judge, *see, e.g., United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir. 1990), *overruled by Thomas*, 274 F.3d at 663. But there is nothing in § 841—nor is there usually in federal criminal statutes—which specifies a division of responsibility between judge and jury as to drug quantity. *See Buckland*, 277 F.3d at 1179–81. In respect to this statute at least, that division is, and in this circuit always has been, a judicially crafted overlay based on constitutional principles; *Apprendi* significantly altered our understanding of those principles and so too our interpretation of the statute. *See id.* at 1181–82; *Brough*, 243 F.3d at 1079. We therefore reject defendant's constitutional challenge to § 841.

III.  *The Marijuana Sentencing Provisions of 21 U.S.C. § 841*

Defendant's second claim of error below is that the district court sentenced him on each count to greater than the statutory maximum for offenses involving an indeterminate amount of marijuana. Because no quantity of marijuana was charged in the indictment, nor was drug quantity submitted to the jury, such a sentence would be error under *Apprendi* and *Thomas*.[12] As alluded to above, while 21 U.S.C. § 841(b)(1)(C) provides the "default provision," as it were, for most controlled substances, the question of just what the "statutory maximum for an indeterminate amount" of marijuana is somewhat more difficult.

There are five provisions in § 841(b) relating to marijuana:

**12.** As noted above, the district court *did* determine the quantity on defendant's conspiracy conviction beyond a reasonable doubt.

1) § 841(b)(1)(A)(vii) provides for a term of imprisonment of 10 years to life imprisonment for a violation of § 841(a) involving 1000 kilograms or more of marijuana; [13]

2) § 841(b)(1)(B)(vii) provides for a term of imprisonment of 5 to 40 years for a violation involving 100 kilograms or more;

3) § 841(b)(1)(C) provides, "except as provided in subparagraphs (A), (B), and (D)," for a term of imprisonment of up to 20 years for a violation involving any Schedule I or II controlled substance; [14]

4) § 841(b)(1)(D) provides for a penalty of up to 5 years for a violation involving less than 50 kilograms of marijuana, "except as provided in paragraphs (4) and (5) of this subsection"; and

5) § 841(b)(4) provides that "[n]otwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marijuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18."

Section 844 of Title 21 covers offenses involving simple possession and provides for a maximum imprisonment of 1 year.

Defendant argues that, absent an indictment and jury finding with respect to quantity, the maximum allowable sentence is one year under § 841(b)(4). The government argues, on the other hand, that the appropriate "default provision" is five years under § 841(b)(1)(D).[15] We agree with the government.

■ We believe that Congress intended that § 841(b)(4) be a mitigating exception to the five-year provision of § 841(b)(1)(D). First, as indicated by the introductory phrase of § 841(b)(4) ("Notwithstanding paragraph (1)(D) of this subsection"), distribution of a small amount of marijuana for no remuneration is an activity prohibited by § 841(a) and covered by the penalty provisions of § 841(b)(1)(D), and therefore represents an exception to an otherwise applicable penalty. Second, there is reason to consider the activity mostly contemplated by § 841(b)(4)—namely, the sharing of small amounts of marijuana in social situations—to be not just one of lesser degree than those covered by (b)(1)(D) but of a different type more akin to simple possession than to provisions intended to cover traffickers.[16] The legislative history of this amendment suggests that Congress took exactly this view. *See, e.g.,* Cong. Rec. 35,555 (Oct. 7, 1970) (statement of Sen. Hughes) ("[t]rafficking provisions should apply to the large

13. The prescribed range of penalties in § 841(b)(1) increases based on the presence of either or both of two additional facts, neither of which is applicable in this case: (1) death or serious bodily injury results from use of the controlled substance involved, or (2) the defendant has prior felony drug convictions.

14. Marijuana is a Schedule I controlled substance. *See* 21 U.S.C. § 812(c).

15. The government has not asked to us to consider § 841(b)(1)(C) to be applicable to a conviction involving an indeterminate amount of marijuana. We therefore do not address the issue although—purely as a matter of statutory construction—we are inclined to believe that Congress intended that § 841(b)(1)(C) be read as providing the penalties for offenses involving not less than 50 kilograms of marijuana while (b)(1)(D) applies to indeterminate quantities.

16. By contrast, offenses involving 50 kilograms of marijuana may represent a lesser magnitude of societal harm than those involving 100 or 1000 kilograms but it would be difficult to argue that they are of a fundamentally different type, hence another reason not to consider § 841(b)(1)(D) to represent a mitigating "exception" to the provisions of (b)(1)(C).

distributor, rather than to the person who is only using the drug with his friends.").

*Apprendi,* however, specifically noted and reaffirmed the distinction between "facts in aggravation of punishment and facts in mitigation." *Apprendi,* 530 U.S. at 490 n. 16, 120 S.Ct. 2348. The Court there noted that where a judge finds a fact which allows a defendant to "escape the statutory maximum" attached to a jury verdict, that finding by the judge "neither expos[es] the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone." *Id.* The Court thereby expressly stated that the concerns animating its decision were absent in such a mitigating scheme. Defendant's interpretation of *Apprendi,* in contrast, would largely prohibit Congress from establishing facts in mitigation of punishment, because any attempt to do so would necessarily result in having to submit to the jury the question of the *negating* of these mitigating facts in order to support a punishment greater than that prescribed in the mitigating provision. (For example, as defendant argues here, defendants would have to be sentenced under the one-year provision of § 841(b)(4) unless the jury found the *absence* of the facts in that mitigating provision—i.e., that the distribution *was* for remuneration.) This would effectively rewrite an otherwise valid criminal statute—something neither done nor authorized in *Apprendi.* We do not believe *Apprendi* in any way calls into question the power of Congress to establish mitigating exceptions to otherwise complete offenses.

Fundamentally, we believe defendant's mistake is to misread *Apprendi* not for what it actually says but for the way it has been applied. That is, defendant argues, paraphrasing *United States v. Lowe,* 143 F.Supp.2d 613 (S.D.W.Va.2000), that "the 'ladder' for the distribution of marijuana begins with the lowest statutory maximum provision found at § 841(b)(4)." *See id.* at 619 (" § 841(b)(4) is the first rung of the penalty ladder for the offense of distribution of marijuana."). It, therefore, according to defendant, must represent the "default" provision for *Apprendi* purposes, and any facts differentiating § 841(b)(4) from provisions with higher statutory maximums must be considered offense elements of those higher-penalty provisions.

This methodology, despite its surface appeal, is nowhere to be found in *Apprendi. Apprendi* stated that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The converse proposition, however, is equally true: any fact that *decreases* the penalty for a crime need not be so treated. *See id.* at 490 n. 16, 120 S.Ct. 2348. In applying *Apprendi* to two or more statutory provisions, therefore, we believe the proper "baseline" or "default" provision is not the provision with the lowest *penalty,* but rather the one which states a complete crime upon the fewest *facts.* The competing provisions must then be analyzed to determine what effect their additional facts have on the maximum punishment prescribed in the baseline: If a fact increases that punishment, it must be treated as an offense element; otherwise, it need not be.[17]

Applying this test to the competing positions in this case, it is clear that § 841(b)(1)(D), not (b)(4), is the "baseline"

---

17. With most other controlled substances— i.e., the ones for which the indeterminate-quantity provision of § 841(b)(1)(C) specifies the lowest penalty tier—these two methodologies yield the same result.

provision, because the latter requires at least one fact—namely, absence of remuneration—not required by the former. Because this additional fact does not "increase the penalty for a crime beyond the prescribed statutory maximum," it need not be treated as an offense element. The statutory maximum for an indeterminate amount of marijuana, therefore, is the five-year provision of § 841(b)(1)(D).

## IV. Substantial Rights

Because we have determined that the statutory maximum penalty for an indeterminate amount of marijuana under § 841(b) is five years, there is no error with respect to defendant's sixty (60) month sentences on the two possession counts. Defendant's sentence on the conspiracy count of 110 months is unconstitutional, however, in light of *Apprendi.* Moreover, this error is "plain." *See Thomas,* 274 F.3d at 667 (error is "plain" if it is clear or obvious at time of appellate review). We must therefore decide whether this error "affect[ed] ... defendant's substantial rights." *Id.* at 668. We hold that it did not.

Under our "modified plain-error rule," applied where, as here, "the source of plain error is a supervening decision," the government, not the defendant, bears the burden to demonstrate that the error did not affect substantial rights—i.e., that the error was harmless. *See United States v. Monteleone,* 257 F.3d 210, 223 (2d Cir.2001).[18] The government claims that this error is harmless because, under the "stacking" provisions of the Sentencing Guidelines, *see* U.S.S.G. § 5G1.2(d), even if defendant's sentence on the conspiracy count is changed to sixty months, his total term of imprisonment (110 months) will not change; the conspiracy count will merely be run consecutively to the possession counts to the extent necessary to achieve that term.[19] We agree with the government. We recently held, in *United States v. Rivera,* 282 F.3d 74 (2d Cir.2002), that if the district court had meant to impose a sentence on an § 841 conviction that exceeded the "default" maximum of twenty years (it was unclear that the district court had done so), any *Apprendi* error resulting from that sentence was nevertheless harmless because the defen-

---

**18.** Although in other cases the government has suggested that our modified plain-error rule is no longer good law in light of *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), *see Thomas,* 274 F.3d at 668 n. 15, the government made no such contention in this case. As the government has not argued the point, we will assume without deciding that our modified plain-error rule remains good law.

**19.** The Sentencing Guidelines provide that, except with respect to counts for which there is a *statutorily prescribed term of imprisonment* or which are required to be run consecutively to other counts, and except where doing so would exceed a statutory maximum, the sentence imposed on each count "shall be the total punishment" as determined by application of the Guidelines—in this case, 110 months. U.S.S.G. § 5G1.2(b); § 5G1.1(a). The "stacking" provision provides that "if the

sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produced a combined sentence equal to the total punishment." § 5G1.2(d).

We have held that the application of § 5G1.2 is largely mandatory except that a district court has the discretion to depart from its provisions to run sentences concurrently "where the imposition of multiple stacked sentences based on similar conduct create[s] 'an aggravating or mitigating circumstance, of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission.'" *United States v. White,* 240 F.3d 127, 136–37 (2d Cir.2001) (quoting *United States v. Rahman,* 189 F.3d 88, 156 (2d Cir.1999)). We see nothing in this case that would justify application of that exception.

dant had also been sentenced to a concurrent term of life imprisonment on a Continuing Criminal Enterprise ("CCE") count under 21 U.S.C. § 848. *See Rivera,* 282 F.3d at 77–78 ("Because Cook could properly be sentenced to life imprisonment on the CCE count, a concurrent sentence on other counts is irrelevant to the time he will serve in prison, and we can think of no collateral consequences from such erroneous concurrent sentences that would justify vacating them."). Although *Rivera* did not involve application of "stacking," the principle—that an erroneous sentence on one count of a multiple-count conviction does not affect substantial rights where the total term of imprisonment remains unaffected—is equally applicable here. We see no basis to distinguish this case from *Rivera.* Like the panel in *United States v. McLean,* 287 F.3d 127 (2d Cir. 2002), before whom this issue was simultaneously under consideration, we agree that we should join with our sister circuits in holding that where a defendant is convicted on multiple counts, any error in exceeding the statutory maximum on a single count is harmless if the application of U.S.S.G. § 5G1.2 would require the sentence on one or more of the remaining counts to be run consecutively so that defendant's total term of imprisonment remains unchanged. *See Buckland,* 277 F.3d at 1184–86; *United States v. Angle,* 254 F.3d 514, 518–19 (4th Cir.2001) (en banc); *United States v. Price,* 265 F.3d 1097, 1108–09 (10th Cir.2001); *United States v. Smith,* 240 F.3d 927, 930 (11th Cir.2001); *United States v. Sturgis,* 238 F.3d 956, 960–61 (8th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 182, 151 L.Ed.2d 127 (2001); *United States v. Page,* 232 F.3d 536, 545 (6th Cir.2000), *cert. denied,* 532 U.S. 1056, 121 S.Ct. 2202, 149 L.Ed.2d 1032 (2001).

We reject defendant's contention that, because at this point he has already served more than sixty months in prison, our holding that the maximum allowable sentence on the conspiracy count is sixty months should lead to his immediate release—in other words, that the district court should not be allowed to alter the concurrent running of the sentences. We rejected a similar argument in *United States v. Triestman,* 178 F.3d 624 (2d Cir. 1999). There, defendant Triestman had been convicted of a drug trafficking offense under 21 U.S.C. § 846, for which he received a sentence of 63 months, and using or carrying a firearm in connection with that offense under 18 U.S.C. § 924(c), for which he received a consecutive sentence of 60 months. Following the Supreme Court's ruling in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), Triestman successfully filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 to vacate his § 924(c) conviction. However, the district court also resentenced Triestman on his drug trafficking count, applying a 2 level sentence enhancement under U.S.S.G. § 2D1.1(b)(1) which had previously been unavailable because of the § 924(c) conviction, thus resulting in a sentence of 85 months—even though at the time of the resentencing he had already served more than the original 63 months. *Id.* at 626–28. We affirmed, holding that the sentences were part of an "interdependent sentencing package" and that the district court had authority to resentence "because Triestman was still serving the overall term on his larger sentencing package." *Id.* at 631; *see also United States v. Gordils,* 117 F.3d 99, 101–04 (2d Cir.1997) (district court had power under § 2255 to reopen entire sentencing package). That holding applies equally well to defendant's case here. We therefore find that the erroneous sentence on the conspiracy count did not affect defendant's substantial rights and accordingly affirm the judgment.

## CONCLUSION

We reject defendant's challenge to § 841's constitutionality and hold that the "default" provision for marijuana is the five-year term of § 841(b)(1)(d). Further, we find that defendant's sentence on the conspiracy count, though in excess of this five-year statutory maximum, did not affect defendant's substantial rights because it did not lengthen his overall term of imprisonment. We therefore affirm the convictions and sentences.

Construing defendant's August 18, 2000 letter to this Court as a notice of appeal from the denial of his § 2255 motion as well as a motion for a certificate of appealability, we deny the motion for failure to make a substantial showing of the denial of a constitutional right, and we dismiss the appeal for lack of jurisdiction.