10-521-cr (L)
United States v. Vilar

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Submitted: May 31, 2011     Decided: July 19, 2011)

Docket Nos. 10-521(L), 10-580(Con), 10-4639 (Con)

- - - - - - - - - - - - - - - - - - - - - -x

**UNITED STATES OF AMERICA,**

     **Appellee,**

     **-v.-**                        **10-521(Lead)**
                                         **10-580(Con)**

**ALBERTO VILAR and GARY ALAN TANAKA,**     **10-4639(Con)**

     **Defendants-Appellants.**[*]

- - - - - - - - - - - - - - - - - - - - - -x

Before:         DENNIS JACOBS, <u>Chief Judge</u>,
              JED S. RAKOFF,[**] <u>District Judge</u>.[***]

---

[*] The Clerk of Court is respectfully instructed to amend the official case caption as shown above.

[**] The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

[***] The Honorable Debra Ann Livingston, an original member of this panel, recused herself. The remaining two panel members agree on the disposition and decide this

1

Alberto Vilar moves to withdraw his direct criminal appeal with leave to reinstate it after he has finished pursuing an application for a writ a habeas corpus before the district court below.  The motion is opposed by the United States and Vilar's codefendant.  In the alternative, Vilar moves for a six-month extension to file his appellate brief.  We **DENY** Vilar's motion to withdraw his direct appeal and **GRANT** Vilar's motion for a six-month extension to file his appellate brief.

FOR MOVANT:      Vivian Shevitz
                 Brooklyn, NY

                 Jane Simkin Smith
                 Millbrook, NY

                 Susan C. Wolfe
                 Hoffman & Pollok LLP
                 New York, NY


FOR RESPONDENT:   Benjamin Naftalis
                  Assistant U.S. Attorney
                  U.S. Attorney's Office
                  Southern District of New York
                  New York, NY

---

motion pursuant to Second Circuit Internal Operating Procedure E(b).

PER CURIAM:

Alberto Vilar timely appealed his criminal conviction in the United States District Court for the Southern District of New York (Sullivan, J.). He now moves to withdraw his direct appeal with leave to reinstate it after he has finished pursuing an application for a writ a habeas corpus in the district court. The United States and Vilar's codefendant both oppose this motion on the ground that it will delay the direct appeal. The government further argues that grant of the motion would invert the ordinary sequence of proceedings in which a defendant exhausts his direct appeals before pursuing collateral attacks. If his motion to withdraw is denied, Vilar moves in the alternative for a six-month extension to file his appellate brief. We hereby **DENY** Vilar's motion to withdraw his direct appeal, but we **GRANT** Vilar's motion for a six-month extension to file his appellate brief.

**BACKGROUND**

In early 2010, Alberto Vilar and Gary Alan Tanaka were convicted of multiple fraud-related felonies by a jury in the United States District Court for the Southern District

3

of New York (Sullivan, J.). Their timely appeals were consolidated in this docket. On appeal, Vilar received new counsel, who contend that his trial counsel inadequately developed the trial record, and thus afforded Vilar ineffective assistance of counsel in violation of his Sixth Amendment rights. To correct this perceived deficiency, Vilar now wishes to collaterally attack his conviction by applying for a writ of habeas corpus from the district court pursuant to 28 U.S.C. § 2255. If successful, the writ would vacate his conviction and require a retrial in which he would have a new opportunity to develop the record.

Because the filing of an application for a writ of habeas corpus would result in two attacks on his conviction pending simultaneously, Vilar now moves this court to let him withdraw his direct appeal without prejudice and with leave to reinstate it after he finishes litigating his habeas application before the district court.

The government and Tanaka both oppose Vilar's motion on the ground that it would significantly delay the direct appeal. If Vilar's motion is granted, Tanaka requests that his appeal be severed to avoid such delay. The government also invokes the waste of government resources and the

4

invasion of the traditional requirement that a defendant exhaust all direct appeals before launching a collateral attack. Tanaka and the government point out that denial of the motion would not prejudice Vilar because he could pursue habeas relief after (or simultaneously with) his direct appeal.

In the event that his motion to withdraw is denied, Vilar moves in the alternative for a six-month extension to file his appellate brief. Vilar argues that because his appellate lawyers are new, they need that time to fully review the trial record, which he characterizes as large and complex. Tanaka endorses Vilar's request for an extension, but requests that the filing deadline be extended only one month. The government opposes any extension, arguing that Vilar now has three lawyers at work, that the case is not particularly complex, and that Vilar's lawyers have already had over a year to prepare his appeal.

**DISCUSSION**

A criminal defendant can challenge his conviction by direct appeal to this Court or by collateral attack, seeking a writ of habeas corpus from the federal district court

under 28 U.S.C. § 2255.  Ordinarily, a defendant must exhaust his direct appeals before applying for habeas relief.  "[H]abeas petitions filed before the petitioner has exhausted his direct appeal are generally considered premature."  Wall v. United States, 619 F.3d 152, 154 & n. 2 (2d Cir. 2010) (per curiam).  But both measures may be pursued simultaneously.  United States v. Outen, 286 F.3d 622, 632 (2d Cir. 2002) (observing there is no jurisdictional bar to a district court adjudicating a § 2255 motion concurrently with the direct appeal).

By moving to withdraw his direct appeal with leave to reinstate it after his habeas application has been litigated, Vilar seeks to pursue a third route: collaterally attacking first and directly appealing second. This initiative raises concerns both jurisdictional and practical.

**I**

The filing deadlines for direct appeals under Federal Rule of Appellate Procedure 4 are "mandatory and jurisdictional."  Outen, 286 F.3d at 630; see also United States ex rel. McAllan v. City of New York, 248 F.3d 48, 51

6

(2d Cir. 2001) (per curiam) ("The Fed. R. App. P. 4 time requirements for taking an appeal have been treated as especially rigid, and a federal court's authority to extend or suspend those limits is narrowly limited."). Under Appellate Rule 4(b), a defendant must file a notice of appeal within 14 days of the later of the entry of judgment by the district court or the notice of appeal by the government. Fed. R. App. P. 4(b)(1). Upon a motion from the defendant, this Court may extend this deadline up to 30 days, *but no longer*. Fed. R. App. P.(b)(4); Fed. R. App. P. 26(b) ("[T]he court may not extend the time to file...a notice of appeal (except as authorized by Rule 4) or a petition for permission to appeal."). After the expiration of the 30-day extension period, this Court is divested of jurisdiction to hear the direct appeal. <u>Outen</u>, 286 F.3d at 630. In other words, if this Court does not take jurisdiction over a direct appeal within the deadlines prescribed by Rule 4, it will lack and cannot regain jurisdiction to hear that appeal.

Vilar asks us to dismiss his appeal--ousting us of appellate jurisdiction over it--while still retaining the ability to revive our jurisdiction at some later date,

presumably much farther in the future than the 30-day extension we may grant under Rule 4(b).  We lack authority to grant such relief.  After the 14-day filing deadline and any extensions authorized by Rule 4(b), we can no longer take appellate jurisdiction over an appeal.  <u>Mendes Junior Int'l Co. v. Banco Do Brasil S.A.</u>, 215 F.3d 306, 311 (2d Cir. 2000) ("[W]e do not interpret the rules of procedure as allowing the court to revive a losing party's right to appeal after both the original appeal period and the permissible grace period have expired.").  Nor may we attempt to circumvent this jurisdictional limitation, even if an extension would be non-prejudicial, convenient, or fair.  <u>See</u> <u>McAllan</u>, 248 F.3d at 52 ("[A]ppellant...sought to expand appellate jurisdiction by asking the district court to re-write history and 're-issue' his order from which a 'timely' appeal could then be taken.  New jurisdictional life cannot be breathed into an appeal whose filing time has already expired.").

While we lack jurisdictional authority to grant Vilar the relief he articulates, we may grant Vilar the effective equivalent.  Instead of dismissing his appeal, we may simply stay our adjudication of it pending the outcome of his

8

§ 2255 application. Because a stay never ousts us of appellate jurisdiction, it avoids the jurisdictional constraints of Rule 4. We have done this in the past when litigants have sought the same relief Vilar seeks here.

In United States v. Hernandez, 5 F.3d 628 (2d Cir. 1993), a defendant convicted in federal district court sought the dismissal of his direct appeal with leave to reinstate it after the district court adjudicated his § 2255 habeas application. Without considering the jurisdictional constraints of Rule 4, we agreed to wait to adjudicate Hernandez's direct appeal until after the district court considered his habeas application. In so doing, we did not specify the mechanism by which we could legitimately delay our consideration of Hernandez's direct appeal.

The defendant in Outen likewise requested the dismissal of his direct appeal with leave to reinstate it after adjudication his § 2255 application. We considered the jurisdictional constraints of Rule 4 and construed the relief we granted in Hernandez as a stay rather than a dismissal and reinstatement. Outen, 286 F.3d at 627–632 & n.7. We ultimately granted Outen the same stay we granted

Hernandez, holding that we had jurisdiction to grant such stays. Id. at 631-32.

Together, Hernandez and Outen make clear that we may construe a defendant's request for a dismissal with leave to reinstate as a motion for a stay, and that we have jurisdiction to grant such a discretionary stay. We now construe Vilar's motion as a request for a stay of his direct appeal pending the outcome of his habeas application. Having determined that we have jurisdiction to grant such a stay, we turn to the question of whether we should do so.

**II**

We generally prefer to adjudicate direct appeals prior to, rather than after, collateral attacks. A "collateral attack is not a substitute for direct appeal and petitioners are therefore generally required to exhaust direct appeal before bringing a petition § 2255." United States v. Dukes, 727 F.2d 34, 41 (2d Cir. 1984); see also Wall, 169 F.3d at 154.

Vilar offers two reasons for inverting this general preference: judicial economy and fairness to the defendant. We find neither reason persuasive.

10

**A**

Vilar argues that, as a matter of efficiency, a successful habeas motion would obviate the direct appeal. This is true enough, but so is the converse: If Vilar's direct appeal were adjudicated first and succeeded, that would eliminate the need for his § 2255 application. Absent a showing that the habeas application is much more promising, judicial economy would seem to favor pursuing the direct appeal first. Direct appeals are generally less time consuming and expensive than habeas application because they involve a fixed record and simpler procedures and standards of review. Moreover, successful habeas applications often result in new trials, while successful direct appeals often do not. And unsuccessful habeas applications often lead to appeals to the circuit court, necessitating another round of briefing and judicial consideration.

Vilar has not shown that his § 2255 motion is more likely to succeed than his direct appeal. Compared to direct appeals, habeas proceedings impose tougher standards on the defendant and require more demanding showings. Vilar provides no reason to think his case is unusual in this regard.

11

Vilar contends that, even if he does not succeed on his § 2255 motion, judicial resources will still be saved because his appeal from the district court's denial of his § 2255 motion could be consolidated with his direct appeal. While such consolidation would reduce the number of appellate adjudications, few if any judicial resources would be conserved. The consolidated appeals would entail different standards, different records, and separate analyses. And simultaneous adjudication of interrelated issues using different standards and different records would increase the complexity of the consolidated appeal. Thus, there is little reason to believe that a consolidated appeal would save significant time or energy compared to two separate appeals.

We therefore conclude that interests of judicial economy disfavor staying Vilar's direct appeal.

**B**

Vilar also argues it is unfair to ask him to litigate his direct appeal on the current record, which he asserts was insufficiently developed by constitutionally ineffective trial counsel. Again, even assuming Vilar's allegation is

12

correct, this insufficiency would not be rectified by allowing him to adjudicate his § 2255 application first: Any additional fact-finding done pursuant to a habeas proceeding would not be part of the record on which we would adjudicate his direct appeal.  And, as discussed above, if Vilar were to succeed on his § 2255 application, there would be no immediate direct appeal at all.  Win or lose, Vilar's motion will not affect the record on which we will decide his direct appeal.  And even if Vilar were required to litigate his direct appeal on an underdeveloped record, he would not be prejudiced by this fact because he could still pursue his collateral attack.

Staying adjudication of Vilar's direct appeal would impose delay on his co-defendant, Tanaka, and the government.  Neither Tanaka nor the government has done anything to delay this appeal, and it would be unfair to them to hold it in abeyance indefinitely while Vilar pursues alternative means of attacking his conviction.  We could eliminate any unfairness to Tanaka by severing his appeal from Vilar's, but this would be highly inefficient and would be unfair to the government, which would then have to litigate separately two almost identical appeals.

13

Fairness, like judicial economy, favors denying Vilar's motion to stay his direct appeal.

**III**

In the alternative, Vilar seeks a six-month extension to file his appellate brief, so his new appellate counsel can fully digest the record and prepare a zealous defense. Tanaka endorses this extension, but requests that it be limited to one month.

We conclude that delaying the direct appeal by six months will not seriously prejudice the government or Tanaka. We therefore grant Vilar's request for a six month extension to file his appellate brief.

**CONCLUSION**

Vilar's motion to withdraw his direct appeal is **DENIED**. Vilar's motion for a six-month extension to file his appellate brief is **GRANTED**. Vilar's appellate brief is now due six months from the issuance of this opinion.