USA v. Lee

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2015

(Argued: April 6, 2016                                    Decided: August 8, 2016)

Docket No. 15-458

_____

UNITED STATES OF AMERICA,

<u>Appellee,</u>

- v. -

DESTIN LEE,

<u>Defendant-Appellant.</u>
_____

Before: KEARSE, CABRANES, and CHIN, <u>Circuit Judges</u>.

Appeal from a judgment of the United States District Court for the Southern District of New York, Vincent L. Briccetti, <u>Judge</u>, convicting defendant of theft of government property and sentencing him to, <u>inter alia</u>, 30 months' imprisonment, <u>see</u> 18 U.S.C. § 641. Defendant contends principally that because a violation of § 641 is a felony only if the value of the property stolen exceeded $1,000, the operative indictment was ineffective to charge him with a felony because it did not allege the value of the property stolen, and his felony conviction thus violated the Grand Jury Clause of the Fifth Amendment. We conclude that the error was harmless.

Affirmed.

SCOTT HARTMAN, Assistant United States Attorney (Preet Bharara, United States Attorney for the Southern District of New York, Sarah Eddy McCallum, Assistant United States Attorney, New York, New York, on the brief), for Appellee.

RICHARD D. WILLSTATTER, White Plains, New York (Green & Willstatter, White Plains, New York, on the brief), for Defendant-Appellant.

KEARSE, Circuit Judge:

Defendant Destin Lee appeals from a judgment entered in the United States District Court for the Southern District of New York, convicting him following a jury trial before Vincent L. Briccetti, Judge, of theft of government property in violation of 18 U.S.C. § 641, sentencing him principally to 30 months' imprisonment, and ordering him to forfeit $400,000 and to pay $400,000 in restitution. On appeal, Lee contends principally that his conviction of a § 641 felony violated the Grand Jury Clause of the Fifth Amendment to the Constitution because a violation of that section is a felony only if the value of the property stolen exceeded $1,000, and the indictment on which he was tried charged only a misdemeanor because it did not allege the value of the property stolen. He also challenges certain of the trial court's evidentiary rulings.

The government contends that Lee's conviction of a felony should stand, arguing principally that the indictment was adequate to charge a felony, and alternatively that if it was not, the error either was harmless or was cured by a mid-trial superseding indictment that alleged a value in excess of $1,000. We conclude that the value of the property stolen is an element of the § 641 felony offense and that, in order to charge Lee with the felony, the indictment on which he was tried should have alleged that the value of the property stolen exceeded $1,000. However, in the

circumstances of this case, in which, <u>inter alia</u>, the defense was fully aware, well in advance of the trial, of the government's intent to prosecute the offense as a felony, and the evidence that hundreds of thousands of dollars' worth of government property had been stolen was overwhelming, the violation of the Grand Jury Clause was harmless. Finding no merit in Lee's other arguments, we affirm his conviction.

# I. BACKGROUND

Section 641 of Title 18 of the United States Code provides as follows:

> Whoever embezzles, <u>steals</u>, purloins, or knowingly converts to his use or the use of another, <u>or without authority, sells</u>, conveys or disposes of <u>any</u> record, voucher, money, or <u>thing of value of the United States or of any</u> <u>department or agency thereof</u>, or any property made or being made under contract for the United States or any department or agency thereof; or
>
> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--
>
> <u>Shall be fined under this title or imprisoned not more than ten years</u>, or both; <u>but if the value of such property in the aggregate</u>, combining amounts from all the counts for which the defendant is convicted in a single case, <u>does</u> <u>not exceed the sum of $1,000, he shall be fined under this title or imprisoned</u> <u>not more than one year</u>, or both.
>
> The word "value" means face, par, or market value, or cost price, either wholesale or retail, <u>whichever is greater</u>.

18 U.S.C. § 641 (2012) (emphases added). "[A]n offense for which the 'maximum term of imprisonment authorized' is 'more than one year'" is "a 'felony.'" <u>Moncrieffe v. Holder</u>, 133 S. Ct. 1678, 1683 (2013) (quoting 18 U.S.C. § 3559(a)). Thus, if the value of the government property stolen exceeds $1,000, the violation of § 641 is a felony.

3

A. The Present Prosecution and the Evidence at Trial as to Value

The present prosecution arose out of an investigation into thefts from a United States Postal Service ("USPS" or "Postal Service") facility of truckloads of plastic pallets ("pallets"), flat structures owned by the Postal Service that the USPS and its customers use to move large quantities of mail by forklift or pallet jack. Lee, during the pertinent period, was the senior tractor-trailer operator at the facility. The investigation--assisted by cooperating witness ("CW") Steven Iannoccone, a participant in the thefts of the pallets--soon focused on Lee.

In October 2013, Lee was arrested and charged in a criminal complaint with having stolen pallets from the Postal Service from late 2011 to and including October 2013. (See October 22, 2013 Complaint ¶ 1.) The complaint alleged that in 2012, "LEE supplied the CW with approximately two trailers full of pallets each week, with each trailer containing between 400 and 500 pallets," that from January to May 2013 he supplied approximately 10 truckloads of pallets per month, and that the agreed payment to Lee was $1 per pallet. (Id. ¶ 6.) In February 2014, Lee and fellow USPS employee Wilfredo Herrera were indicted, charged with one count of stealing pallets from the Postal Service in violation of 18 U.S.C. §§ 641 and 2.

After Herrera pleaded guilty, the grand jury handed down superseding indictments against Lee alone in August 2014 ("S2") and September 2014 ("S3"). The S3 Indictment charged a violation of § 641 as follows:

> 1. From in or about late 2011, up to and including in or about October 2013, in the Southern District of New York and elsewhere, DESTIN LEE, the defendant, knowingly did embezzle, steal, purloin, and convert to his own use and the use of another, money and things of value of the United States and of a department and agency thereof, and did receive, conceal, and retain the same with intent to convert it to his own use and gain, knowing it to have been

embezzled, stolen, purloined, and converted, and did aid and abet the same, to wit, LEE participated in a scheme to steal and did steal pallets belonging to the United States Postal Service.

(Title 18, United States Code, Sections 641 and 2.)

(S3 Indictment at 1.) It also contained a forfeiture allegation, which read in part as follows:

2. As a result of committing the offense alleged in Count One of this Indictment, DESTIN LEE, the defendant, shall forfeit to the United States . . . all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense.

(Id. at 1-2.)

The government's evidence at trial included testimony by Lee's co-worker Herrera and Iannoccone, an independent trucker. Iannoccone testified that Lee was his principal contact at the Postal Service for thefts of pallets. Pallets were valuable because they could be resold to recyclers. When Iannoccone had buyers for pallets he called Lee, who would arrange for a Postal Service trailer containing pallets to be in a relatively secluded area of the USPS facility so they could be loaded into Iannoccone's truck with minimal observation. If Lee was not available, Herrera would sometimes make the advance arrangements. Iannoccone, with Lee and/or Herrera, transferred the pallets from the USPS trailers to the trucks driven in by Iannoccone. Iannoccone gave Lee half of the money he received from the buyers. Herrera was paid a flat fee of $50 or $100 each time he assisted.

Iannoccone testified that the thefts began in 2009 and that the pallets were sold to a succession of three buyers. His testimony indicated that the sales to the first buyer preceded the 2011-2013 period covered by the S3 Indictment, and it was imprecise as to the timing of the sales to their second buyer. However, his testimony as a whole, taken in the light most favorable to the government, along with testimony by Herrera, made clear that the thefts for sales to the third buyer occurred within the indictment period. Iannoccone testified that he sold "probably anywhere from

5

30 to 40 box trucks" of pallets to the third buyer (Trial Transcript ("Tr.") at 80); Herrera testified that he first became involved in the scheme about two years before his arrest in October 2013, and that he helped Lee and Iannoccone steal pallets approximately 40 times (see id. at 345-46, 312).

Iannoccone testified that they loaded each box truck with approximately 500 pallets. Thus, if as few as 30 truckloads were delivered to the third buyer, he and Lee stole some 15,000 pallets during the period covered by the indictment.

A USPS equipment manager testified that from 2011 through 2013, the Postal Service paid an average of $15-$20 per plastic pallet. Thus, the evidence indicated that the stolen pallets had cost the government at least $225,000.

Lee testified that he was not involved in any thefts and knew nothing about them: "Lee flatly denied helping Iannaccone steal pallets. He never saw Iannaccone steal pallets but he did see him frequently with Herrera. . . . He did not load any trailer with pallets to be brought to Iannaccone." (Lee brief on appeal at 31.)

B.  Submission of the Case to the Jury

The court had set a trial date of September 22, 2014, and a deadline of September 5 for the parties to submit various motions and their requests for jury instructions. On September 5, the government filed its requested instructions, which included the following:

**Request No. 3:  Elements of the Offense**

In order for you to find the defendant guilty of the offense charged in the Indictment, the Government must prove beyond a reasonable doubt the following four elements:

. . . .

Fourth, that the value of the property was greater than $1,000.

. . . .

**Request No. 7:  Fourth Element:  Value of Property**

The fourth and final element the Government must prove beyond a reasonable doubt is that the value of the property stolen or knowingly converted was greater than $1,000.

(Government's Requests To Charge dated September 5, 2014, at 5, 9.)

The presentation of evidence at trial began on September 23, 2014, and was to be concluded on September 30 after a morning charge conference.  On the evening of September 29, Lee filed an objection to the government's request to instruct the jury that to convict him it must find that the stolen pallets had a value of more than $1,000.  He argued that the S3 Indictment did not charge the value element; that it thus charged him with only a misdemeanor, not a felony; and, accordingly, that the jury could not properly make a finding as to value or find him guilty of a felony.  The issue was discussed during the morning charge conference on September 30, but the conference was adjourned without a resolution.

After trial resumed and the defense rested, the government informed the court that, following the morning charge conference, the grand jury had returned a further superseding indictment (the "S4 Indictment").  The language in the S4 Indictment, alleging theft of United States money and things of value, was identical to that in S3 except that it added that "the value of which money and things of value did exceed $1,000," and that Lee stole Postal Service pallets "that were worth thousands of dollars" (S4 Indictment at 1).

Lee objected to the S4 Indictment as untimely.  The government, while maintaining that the S3 Indictment adequately charged a felony offense, stated that the S4 Indictment was "offered

7

in the nature of an amendment to the S3 indictment" (Tr.770); it took the position that as long as either indictment properly charged a felony, a verdict could be returned under that indictment. The government also represented that evidence of the value of the pallets had in fact been presented to the grand jury that returned the S3 Indictment (and indeed, each prior indictment). The district court arraigned Lee on the S4 Indictment (Lee pleaded not guilty); but it ruled that trial would continue under the S3 Indictment.

After the charge conference resumed, the court rejected Lee's contention that the S3 Indictment failed to charge a felony and overruled his objection to allowing the jury to make a finding on the value of the stolen pallets. The court reasoned that

> the language [of 18 U.S.C. § 641] defining the felony offense--in other words, the one for which the defendant can be sentenced to up to ten years in prison-- does not say anything about the value of the property stolen. The value language comes later in the statute in what the government refers to as a misdemeanor carve-out.
>
> . . . .
>
> The carve-out language is not technically an element of the offense. Second Circuit case law and common sense, of course, require[] the jury to find that a defendant does not fall within the carve-out in order to be sentenced to more than one year. In other words, in order for the defendant to be sentenced to and thereby convicted of a felony, the government certainly needs to prove and the jury needs to find that the defendant does not fall within the carve-out or, to put it another way, that the value of the property stolen in the aggregate, for all of the counts for which he's convicted in a single case, exceeds a thousand dollars.
>
> But value as such is not an element of the crime itself as defined by Congress in 641. And that's all that matters.

(Tr.807-08 (emphasis added).)

The district court proceeded to charge the jury under the S3 Indictment but included value as one of the four elements the jury was required to find before it could convict:

8

Now, for to you find the defendant guilty of the offense charged in the indictment, the government must prove beyond a reasonable doubt the following four elements:

First, that the money or things of value described in the indictment-- namely, pallets--belong to the United States;

Second, that the defendant stole or knowingly converted that property;

Third, that the defendant acted knowingly and willfully with the intent to deprive the government of the use and benefit of its property;

Fourth, that the value of the property was greater than $1,000.

(Tr.907-08 (emphases added).) As to the fourth element, the district court instructed that "value means face or market value or cost price, whichever is greater," and that the jury "may consider the aggregate or total value of the property referred to in the indictment." (Tr.909.)

The jury found Lee guilty. His sentence, as indicated above, included a 30-month term of imprisonment.

This appeal followed.

## II. DISCUSSION

On appeal, Lee contends principally that because the S3 Indictment did not allege that the value of the stolen pallets exceeded $1,000, his conviction of the § 641 felony violated his right under the Grand Jury Clause. He also contends that the district court erred in excluding certain evidence that he sought to introduce at trial. As to his Grand Jury Clause contention, Lee argues, inter alia, that "the district court d[id] not have jurisdiction to try, convict, or sentence [him] for" a felony rather than the misdemeanor "charged in the indictment" (Lee brief on appeal at 42-43 (internal

9

quotation marks omitted)); that his conviction violates "[t]he familiar rule of Apprendi v. New Jersey, 530 U.S. 466 (2000) . . . that 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt'" (Lee brief on appeal at 41 (emphasis ours)); that "[t]he government's grafting onto the S3 Indictment of the value element was a constructive amendment of the indictment" entitling him to an automatic reversal (id. at 43); and that his right to action by a grand jury would be lost if "the prosecution, or the court," were allowed "to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment" (id. at 41 (internal quotation marks omitted)).

Lee also states that

> [w]here there is insufficient proof that a person has committed a greater offense, an appellate court may remand for resentencing on a lesser included offense. See United States v. Boissoneault, 926 F.2d 230, 235 (2d Cir. 1991). It follows that where a man has been convicted of a greater offense that was not charged in his indictment, the Court of Appeals may vacate that conviction and remand for resentencing on the crime that was in fact charged

(Lee brief on appeal at 45-46), and he argues that his felony conviction should be reversed and that "[a] new trial of the misdemeanor should be ordered or, alternatively, [he] should be sentenced on the misdemeanor" (id. at 57).

We agree only with Lee's contention that the indictment on which he was tried, in order to charge him at the felony level, should have included an allegation that the value of the government property stolen was in excess of $1,000. The holding of Apprendi is a factor in our conclusion, although that case involved a state statute, and, contrary to Lee's characterization of the case as dealing with what must be charged "in an indictment" (Lee brief on appeal at 41 (internal quotation marks omitted)), the Apprendi Court "d[id] not address the indictment question separately" because

10

the Due Process Clause of the Fourteenth Amendment, applicable to the States, "has not . . . been construed to include the Fifth Amendment['s] . . . Grand Jury[ Clause]," 530 U.S. at 477 n.3 (internal quotation marks omitted). For the reasons that follow, we conclude that in the circumstances of this case, the failure of the S3 Indictment to allege that the value of the stolen pallets exceeded $1,000 was error--but an error that was harmless beyond a reasonable doubt.

A. Value Exceeding $1,000 as an Element of a § 641 Felony

Section 641, set forth in full in Part I above, provides in pertinent part that

> [w]hoever . . . steals . . . or knowingly converts to . . . the use of another . . . any . . . thing of value of the United States or of any department or agency thereof . . .
>
> . . . .
>
> Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate . . . does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.
>
> The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

18 U.S.C. § 641 (emphasis added). The prohibited conduct must be proven to have been intentional. See Morissette v. United States, 342 U.S. 246, 263-73 (1952).

There is no dispute that § 641 encompasses two offenses--a felony (punishable by, inter alia, imprisonment up to ten years) and a misdemeanor (punishable by, inter alia, imprisonment of no more than one year)--and that the dividing line between the two is the value of the stolen property. The threshold for conviction of a § 641 felony, for offenses committed on or after October 11, 1996, see Pub. L. No. 104-294, § 606(a), 110 Stat. 3488, 3511 (increasing threshold to $1,000 from $100)),

11

is value in excess of $1,000. Lee pursues the argument he made at trial, that value exceeding $1,000 is thus an element of the felony.

The government argues on appeal--contrary to its requested jury charge at trial (see Part I.B. above)--that the value of the stolen property is not an element of the felony, citing United States v. Outen, 286 F.3d 622 (2d Cir. 2002) ("Outen"), and United States v. Grillo, 160 F.3d 149 (2d Cir. 1998) ("Grillo"). In Outen, a case involving quantities of drugs and various provisions in Title 21, this Court stated that in applying Apprendi to two or more statutory provisions the proper default provision is the one that states a complete crime upon the fewest facts. See 286 F.3d at 638. The government contends that because § 641's "language describing the felony violation contains no reference to value[, and] value is mentioned only in connection with eligibility for mitigation" (Government brief on appeal at 27), "the default violation is a felony violation, and . . . the possibility of misdemeanor exposure constitutes an exception based on mitigating facts" (id. at 24). The apparent effect of this interpretation would be that if the government wished to prosecute a defendant for a misdemeanor violation of § 641 it would have to prove that the property stolen had a value of $1,000 or less, but that to prosecute him for a § 641 felony, it need not prove that the value of the property stolen exceeded $1,000. This counterintuitive construction is not supported by Outen or the text of § 641.

The conduct prohibited by § 641, to the extent relevant to this case, is set out in the first paragraph of this Part II.A., as quoted above. To establish such conduct, the government is required to prove four essential elements: (1) stealing or converting, (2) with intent to steal or convert, (3) a "thing of value" (4) that belongs to the government. The "value" of the "thing" taken--whether great or small--is an element of the offense. If the "thing" knowingly and intentionally taken

12

from the government had no value, § 641 was not violated. Thus, the fact that a separate paragraph of § 641, setting out penalties for the prohibited conduct, specifies a ceiling value in its misdemeanor clause but does not expressly mention value in its felony clause does not mean that value is not an element of the felony. The "value," in "thing of value," is integral to the prohibition stated in the first paragraph of § 641.

If the government at trial proves all four of the above elements--including that the "thing" stolen had some value--any value, even if small--it has proven a violation of § 641. Proof that the "thing" simply had some value, without proof that the value exceeded $1,000, would show a complete crime upon the fewest facts--a misdemeanor. And if the value of the "thing" is shown at trial to have been in excess of $1,000, the government has proven a felony. See generally Morissette, 342 U.S. at 266-69 (discussing antecedents of § 641, and stating that "each" of those collected offenses was "at its least, a misdemeanor, and if the amount involved [was] one hundred or more dollars each [was] a felony" (emphasis added)).

Accordingly, we, along with most of our Sister Circuits, have held that property value in excess of § 641's felony threshold amount--which for offenses prior to October 11, 1996 was $100, see 18 U.S.C. § 641 (1994)--is an element of the felony: "As to the value of the goods stolen, '[f]or the offense proscribed by 18 U.S.C. § 641 to amount to a felony, there must be both charge and proof that the value of the property stolen . . . exceeds the sum of $100.'" United States v. Robie, 166 F.3d 444, 449 (2d Cir. 1999) ("Robie") (quoting Theriault v. United States, 434 F.2d 212, 214 (5th Cir. 1970), cert. denied, 404 U.S. 869 (1971) (emphasis ours)). Accord United States v. DiGilio, 538 F.2d 972, 978 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977); United States v. Wilson, 284 F.2d 407, 408 (4th Cir. 1960); United States v. Jeter, 775 F.2d 670, 679 (6th Cir. 1985), cert. denied, 475 U.S.

13

1142 (1986); Churder v. United States, 387 F.2d 825, 833 (8th Cir. 1968); United States v. Seaman, 18 F.3d 649, 650 (9th Cir. 1994); United States v. Alberico, 604 F.2d 1315, 1321 (10th Cir.), cert. denied, 444 U.S. 992 (1979); United States v. Langston, 903 F.2d 1510, 1512 (11th Cir. 1990). Contra United States v. Webber, 536 F.3d 584, 595-96 (7th Cir. 2008); United States v. Howard, 30 F.3d 871, 875 (7th Cir. 1994).

This Court's decision in Grillo does not suggest that we should deviate from our holding in Robie. First, Robie was decided after Grillo. Second, Grillo involved not theft but fraud, prosecuted under a section which provides that a person who "makes . . . a false statement . . . in connection with the application for or receipt of . . . [certain government] benefit[s] . . . shall be guilty of perjury," 18 U.S.C. § 1920 (emphases added). Unlike theft crimes prohibited in § 641, the § 1920 perjury crime is complete upon the making of the false statement in connection with the application, regardless of whether the application is successful. Thus, while § 1920, like § 641, provides that if the amount of benefits fraudulently obtained does not exceed $1,000 the maximum imprisonment is "not more than 1 year," 18 U.S.C. § 1920, we held, consistent with the prohibition against fraud in an application, that the actual receipt of benefits was not an essential part of the crime, see 160 F.3d at 150. Moreover, although we held that § 1920's reference to the level of benefits obtained was "part of the punishment portion of the statute," id., the prison term to which Grillo had been sentenced was three months, thus creating no issue to be addressed as to the propriety of a sentence at the felony level.

Our view that value in excess of the § 641 felony threshold amount is an element of a § 641 felony finds support in the holding of Apprendi, see 530 U.S. at 490 ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

14

maximum must be submitted to a jury, and proved beyond a reasonable doubt"), and in the holdings and reasoning of other Supreme Court cases dealing with whether a fact that changes a felony to an aggravated felony was meant to be an element of the aggravated felony, see, e.g., Jones v. United States, 526 U.S. 227 (1999), or with whether a fact that changes a misdemeanor to a felony was meant to be an element of the felony, see, e.g., Carter v. United States, 530 U.S. 255 (2000). In Jones, which explored the structure of the federal carjacking statute, 18 U.S.C. § 2119, and other provisions, the Court noted that "[m]uch turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt," 526 U.S. at 232. The Jones Court stated that "[i]t is at best questionable whether the specification of facts sufficient to increase a penalty range by two-thirds . . . was meant to carry none of the process safeguards that elements of an offense bring with them for a defendant's benefit," id. at 233 (emphasis added).

In Carter, the Court discussed 18 U.S.C. § 2113(b), which, like § 641, sets a value exceeding $1,000 as the threshold for conviction as a felony. Section 2113(b) does not use § 641's "but if" formulation but sets out two paragraphs prohibiting thefts of property from certain types of financial institutions, with the first paragraph authorizing, inter alia, imprisonment of up to 10 years for theft of property having a "value exceeding $1,000," and the second limiting the imprisonment authorization to one year for theft of property having a "value not exceeding $1,000." The Carter Court noted that the structure of § 2113(b), employing grammatically independent paragraphs, "strongly suggests that Congress intended the valuation requirement to be an element of each paragraph's offense, rather than a sentencing factor of some base § 2113(b) offense," 530 U.S. at 273; but it stated that

15

> [e]ven aside from the statute's structure, the "steeply higher penalties"--an enhancement from a 1-year to a 10-year maximum penalty on proof of valuation exceeding $1,000--leads us to conclude that the valuation requirement is an element of the first paragraph of subsection (b).

Id. (emphases added).

On the basis of the same reasoning, we conclude that our ruling in Robie remains sound, and that valuation in excess of $1,000, which in § 641 changes a misdemeanor into a felony and increases the maximum authorized penalty ten-fold, is an element of the § 641 felony offense.

B.  The Grand Jury Clause

The Grand Jury Clause of the Fifth Amendment generally protects a person from prosecution in a federal court "for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. amend. V.  Thus, with respect to federal felonies, a defendant has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury."  Stirone v. United States, 361 U.S. 212, 217 (1960)).  "Elements of a crime must be charged in an indictment," United States v. O'Brien, 560 U.S. 218, 224 (2010); the "indictment," to be "sufficient," should "set forth all the elements necessary to constitute the offence intended to be punished," Hamling v. United States, 418 U.S. 87, 117 (1974) (internal quotation marks omitted) (emphasis ours); and "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself," Stirone, 361 U.S. at 215-16.

In the present case, therefore, for Lee to be tried on a § 641 felony charge, the S3 Indictment should have alleged that the value of the stolen pallets exceeded $1,000.  It did not contain such an allegation.

C.  Harmless-Error Analysis

That violation of the Grand Jury Clause does not automatically entitle Lee to relief on appeal, however, for "defects in an indictment do not deprive a court of its power to adjudicate a case," but rather go "to the merits of the case," United States v. Cotton, 535 U.S. 625, 630-31 (2002) (internal quotation marks omitted); and as to the merits, "not all constitutional violations amount to reversible error," Satterwhite v. Texas, 486 U.S. 249, 256 (1988).  Indeed, the Supreme Court has stated that

> "'most constitutional errors can be harmless.'"  Neder v. United States, 527 U.S. 1, 8 (1999) (quoting Arizona v. Fulminante, 499 U.S. 279, 306 (1991)). "'[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" 527 U.S., at 8 (quoting Rose v. Clark, 478 U.S. 570, 579 (1986)).  Only in rare cases has th[e Supreme] Court held that an error is structural, and thus requires automatic reversal.

Washington v. Recuenco, 548 U.S. 212, 218 (2006) (emphases added).

A "structural" error is one that "infect[s] the entire trial process, . . . and necessarily render[s] a trial fundamentally unfair," Neder v. United States, 527 U.S. 1, 8 (1999) (internal quotation marks omitted).  The Court

> ha[s] found structural errors in only a very limited class of cases:  See Gideon v. Wainwright, 372 U.S. 335 (1963) (a total deprivation of the right to counsel); Tumey v. Ohio, 273 U.S. 510 (1927) (lack of an impartial trial judge); Vasquez v. Hillery, 474 U.S. 254 (1986) (unlawful exclusion of grand jurors of defendant's race); McKaskle v. Wiggins, 465 U.S. 168 (1984) (the right to self-representation at trial); Waller v. Georgia, 467 U.S. 39 (1984) (the right to a public trial); Sullivan v. Louisiana, 508 U.S. 275 (1993) (erroneous reasonable-doubt instruction to jury).

Johnson v. United States, 520 U.S. 461, 468-69 (1997); see also Holloway v. Arkansas, 435 U.S. 475 (1978) (conflict of interest in representation throughout entire proceeding); White v. Maryland, 373 U.S. 59 (1963) (absence of counsel from arraignment proceeding that affected entire trial because

17

defenses not asserted were irretrievably lost); Ballard v. United States, 329 U.S. 187 (1946) (exclusion of women from grand jury service).

The Court has not considered as structural--i.e., impervious to harmless-error analysis-- such errors as the erroneous admission of evidence in violation of the Fifth Amendment guarantee against self-incrimination, see Arizona v. Fulminante, 499 U.S. 279, 310 (1991); or the trial court's failure, in violation of the Sixth Amendment right to jury trial, to instruct the jury to make a finding with respect to one element of the crime, see Neder, 527 U.S. at 11; or a Fifth Amendment due process violation by giving an instruction that shifted to the defendant the burden of proof with respect to malice, see Rose v. Clark, 478 U.S. 570, 579-80 (1986). Nor has the Court found structural error in cases involving a violation of the Grand Jury Clause. That Clause, which governs federal prosecutions, has not even been held applicable to the States through the Due Process Clause of the Fourteenth Amendment. See, e.g., Apprendi, 530 U.S. at 477 n.3; Alexander v. Louisiana, 405 U.S. 625, 633 (1972); Hurtado v. California, 110 U.S. 516, 538 (1884).

In Russell v. United States, 369 U.S. 749 (1962), the Court noted that "[t]he constitutional provision that a trial may be held in a serious federal criminal case only if a grand jury has first intervened reflects centuries of antecedent development of common law," and that "[f]or many years the federal courts were guided in their judgments concerning the construction and sufficiency of grand jury indictments by the common law alone." 369 U.S. at 761. In 1872, however, Congress enacted a harmless-error statute, the "substance [of which] is preserved in the more generalized provision of Rule 52(a) of the Federal Rules of Criminal Procedure, which states that '[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.'" Russell, 369 U.S. at 762.

18

The Russell Court stated that "[o]f like relevance" to the Grand Jury Clause "is the guaranty of the Sixth Amendment that 'In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation," 369 U.S. at 761, and that the "primary office" of an indictment is "to inform the defendant of the nature of the accusation against him," id. at 767, i.e., the "core of criminality," id. at 764.

While "the Fifth Amendment grand jury right serves a vital function in providing for a body of citizens that acts as a check on prosecutorial power," "that is surely no less true of the Sixth Amendment right to a petit jury." Cotton, 535 U.S. at 634. And given that the Supreme Court, as discussed above, has held an error resulting in the lack of a finding of an offense element by the petit jury to be non-structural and subject to harmless-error analysis, see, e.g., Neder, 527 U.S. at 11, we infer that the role of the grand jury as an independent check on prosecutors and courts likewise does not provide a basis for considering the grand jury's failure to allege an element that changes a misdemeanor to a felony to be a structural error that is impervious to harmless-error analysis.

The Supreme Court has "identified two constitutional requirements for an indictment: 'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense," United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007) (quoting Hamling v. United States, 418 U.S. at 117). Recognizing that the Court thus describes the need to set out the elements and to give fair notice of the charge as a single requirement, we conclude that an indictment's failure to allege an element that increases the authorized punishment from the misdemeanor level to the felony level may be a harmless error if the concerns as to fair notice and double-jeopardy protection are otherwise satisfied. Cf. United States v. Confredo, 528

19

F.3d 143, 156 (2d Cir. 2008) (concluding that the indictment's failure to allege that the defendant committed the relevant offenses while released on bail, a factor that increased his authorized punishment, was subject to harmless-error analysis), cert. denied, 556 U.S. 1144 (2009).

Lee contends, however, that any consideration of the fact that the value of the stolen pallets exceeded $1,000 constituted a constructive amendment of the S3 Indictment and that he is automatically entitled to reversal and to be sentenced as if convicted of the misdemeanor. We conclude that Lee is not entitled to such relief on the basis that there was either a constructive amendment of, or a variance from, the S3 Indictment.

> [A] constructive amendment occurs where the government introduces proof of "a complex of facts distinctly different from that" charged by the grand jury, not where it merely amends details pertaining to "a single set of discrete facts" set forth in the indictment."

United States v. Bastian, 770 F.3d 212, 223 (2d Cir. 2014) ("Bastian") (quoting United States v. D'Amelio, 683 F.3d 412, 417 (2d Cir. 2012) ("D'Amelio") (emphasis ours), cert. denied, 133 S. Ct. 2021 (2013)). "Not every divergence from the terms of an indictment, however, qualifies as a constructive amendment." Bastian, 770 F.3d at 220. Since the "primary office" of the indictment is "to inform the defendant of the nature of the accusation against him," Russell, 369 U.S. at 767,

> [w]e have "consistently permitted significant flexibility in proof" adduced at trial to support a defendant's conviction, "provided that the defendant was given notice of the core of criminality to be proven" against him.

Bastian, 770 F.3d at 220 (quoting D'Amelio, 683 F.3d at 417 (emphases in D'Amelio)).

> To prevail on . . . a claim [of constructive amendment], "a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." United States v. Frank, 156 F.3d 332, 337 (2d Cir.1998); accord United States v. Rigas, 490 F.3d 208, 226 (2d Cir.2007); United States v. Salmonese, 352 F.3d 608, 620 (2d Cir.2003). Although

20

constructive amendment is viewed as a per se violation of the Grand Jury Clause, sufficient to secure relief without any showing of prejudice, this court has proceeded cautiously in identifying such error, "consistently permitt[ing] significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial."

United States v. Agrawal, 726 F.3d 235, 259-60 (2d Cir. 2013) ("Agrawal") (quoting D'Amelio, 683 F.3d at 417 (first emphasis ours; second and third emphases in D'Amelio)), cert. denied, 134 S. Ct. 1527 (2014). Thus, we have held that there was no constructive amendment where the defendant had sufficient "notice of the core criminal conduct for which he was charged." United States v. Delano, 55 F.3d 720, 729-30 (2d Cir. 1995) (emphasis added); United States v. Patino, 962 F.2d 263, 266 (2d Cir.) (emphasis added), cert. denied, 506 U.S. 927 (1992). As discussed below, Lee had ample notice of the core of criminal conduct for which he was charged.

In contrast to a constructive amendment, a "variance" from an indictment "occurs when the charging terms are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." United States v. Helmsley, 941 F.2d 71, 89 (2d Cir. 1991), cert. denied, 502 U.S. 1091 (1992); see, e.g., Dunn v. United States, 442 U.S. 100, 105 (1979); Agrawal, 726 F.3d at 260; D'Amelio, 683 F.3d at 417; United States v. Salmonese, 352 F.3d 608, 621 (2d Cir. 2003) ("Salmonese"). "A variance raises constitutional concerns only if it deprives a defendant of the notice and double jeopardy protections of an indictment," Agrawal, 726 F.3d at 260; see, e.g., United States v. D'Amelio, 683 F.3d at 417. "Where the defendant has notice of the 'core of criminality' to be proven at trial, we have permitted 'significant flexibility' in proof without finding prejudice." United States v. Kaplan, 490 F.3d 110, 129 (2d Cir. 2007) (emphasis added); see, e.g., Agrawal, 726 F.3d at 260-61; D'Amelio, 683 F.3d at 420.

Normally, where the allegation is that there has been a variance, the burden is on the defendant to establish that the error was prejudicial in order to secure relief on appeal, see e.g., Agrawal, 726 F.3d at 260; Salmonese, 352 F.3d at 621-22. In the present case, given our conclusion that there was a violation of the Grand Jury Clause, we view it appropriate to frame the question as whether the error was harmless. Prejudicial error and harmless error are opposite sides of the same issue: whether the error did or did not affect the defendant's substantial rights. The difference is that if relief is to be granted only if the error was prejudicial, the burden of proof is on the defendant; if the question is whether the error was harmless, the burden is on the prosecution. See, e.g., United States v. Olano, 507 U.S. 725, 734-35 (1993); cf. United States v. Groysman, 766 F.3d 147, 155 (2d Cir. 2014) (burden of establishing plain error is on the defendant; burden of establishing harmless error is on the government); United States v. Thomas, 274 F.3d 655, 668 (2d Cir. 2001) (en banc) (same). And when the prosecution has the burden of proving that a constitutional error was harmless, it must establish harmlessness "beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967); see, e.g., Fulminante, 499 U.S. at 295; Satterwhite, 486 U.S. at 258.

In the present case, we are convinced that the lack of a specification in the S3 Indictment that the value of the stolen pallets exceeded $1,000 was harmless beyond a reasonable doubt. First, the S3 Indictment gave Lee specific notice of the nature of the offense and the core of criminal condut to be proven at trial. It alleged that he had "participated in," and "aid[ed] and abet[ted]," the theft of "things of value" to the government. It specified the nature of the "things of value," i.e., pallets; specified the government agency or department that owned the pallets, i.e., the Postal Service; and specified the period during which the thefts occurred, i.e., the approximately two-year period ending in October 2013. It plainly gave Lee fair notice of the conduct with which he was

22

charged. And if he were finally convicted or acquitted, it was ample to afford him protection against double jeopardy if he were to be subjected to prosecution again for theft of USPS pallets from late 2011 into October 2013.

Second, it is clear that the evidence at Lee's trial did not prove conduct different from the conduct alleged in the S3 Indictment. The complex of facts was precisely the same.

Third, despite the absence of an allegation in the S3 Indictment that the value of the pallets stolen by Lee over that two-year period exceeded $1,000, it is clear that Lee had notice throughout that the government intended to prove that valuation. As described in Part I.A. above, the very first charging document against Lee, the criminal complaint, alleged that during just one of the calendar years in question he had supplied the cooperating witness with two trailers of pallets a week, that a trailer held 400-500 pallets, and that Lee's fee was $1 per pallet. At that price, and at 800 pallets a week for a year, Lee's share from the sale of the stolen pallets, for just a fraction of the period covered by the indictment, was more than $40,000.

In addition, on September 5, more than two weeks prior to trial, the government filed its requests-to-charge, asking that the jury be instructed to determine whether the more-than-$1,000 valuation element was met. Lee voiced no objection until the evening of September 29, after the government had rested its case. At the charging conference the next morning, the district court noted that Lee had long been

> on notice that this was a felony charge. Not by virtue of the indictment, but by virtue of the way in which the case was prosecuted, the discovery, the complaint, . . . whatever [plea] discussions have been made, and plus the evidence at trial itself.

(Tr.696.) Lee's counsel candidly admitted to the district court that he had "always believed the

23

government was seeking to prosecute [Lee] for a felony." (Id.) Clearly, there was no lack of actual notice that the government sought to punish Lee's conduct as a felony.

Further, Lee's contention that the violation of the Grand Jury Clause should entitle him to a remand for the district court to resentence him only for a misdemeanor suffers multiple flaws. To begin with, his citation of Boissoneault, 926 F.2d 230, for that proposition is far off the mark. We ordered such relief in Boissoneault because the trial evidence was insufficient to support the defendant's conviction of the felony. There is no such insufficiency here. Iannoccone and Herrera testified at trial that, during the period covered by the S3 Indictment, they collaborated with Lee in the theft of as many as 40 truckloads of pallets (see Tr. 80 (Iannoccone: 30-40); id. at 310-12, 386 (Herrera: 40)); and Iannoccone testified that a truck would hold 500 pallets. Thus, there was proof that Lee participated in stealing 15,000-20,000 pallets. The USPS equipment manager testified that the Postal Service had paid an average price of $15-20 per pallet; thus the value of the stolen pallets was shown to be at least $225,000, and as much as $400,000. Plainly, the evidence overwhelmingly supported a finding that Lee was responsible for stealing USPS pallets worth more than $1,000.

Nor, given the sufficiency of the evidence as to that value, is there any double-jeopardy basis for requiring that Lee be resentenced for only a misdemeanor. A defendant who seeks relief on appeal on a basis other than insufficiency of the evidence is subject to retrial, and the government is free to seek a new (and improved) indictment. See, e.g., Dunn, 442 U.S. at 113 n.14; see generally Lockhart v. Nelson, 488 U.S. 33, 38 (1988); Rose v. Mitchell, 443 U.S. 545, 557-58 (1979); North Carolina v. Pearce, 395 U.S. 711, 720-21 (1969).

And finally, there is no need to guess whether a grand jury would be inclined to allege that Lee had stolen pallets worth more than $1,000. Although in Stirone--in which the government had been allowed to introduce evidence at trial that the defendant obstructed prospective interstate commerce in steel from a mill yet to be constructed, while the indictment charged him only with obstructing commerce in sand and supplies for mixing concrete--the Court noted that "neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built" with that concrete, 361 U.S. at 217, there is no semblance of any uncertainty in this case. Within 24 hours of Lee's making known his objection to having the § 641 felony-threshold value question submitted to the jury, the grand jury handed down S4, which alleged that Lee had stolen Postal Service pallets "that were worth thousands of dollars" (S4 Indictment at 1). Although the S4 Indictment was not used at trial, it leaves no doubt about the grand jury's view as to the value of the stolen pallets.

In all the circumstances--including the S3 Indictment's specifications as to Lee's core criminal conduct, the overwhelming trial evidence of Lee's conduct matching those specifications, Lee's admitted knowledge that the government sought to have him sentenced as a felon, the (unused) S4 Indictment expressly alleging that the value of the stolen pallets exceeded $1,000, the fact that if the present conviction were overturned, Lee would be subject to retrial on the felony charge, and the trial evidence that he participated in the theft of hundreds of thousands of dollars' worth of Postal Service pallets--we conclude that the failure of the S3 Indictment to allege that the value of the stolen pallets exceeded $1,000 did not affect Lee's substantial rights.

25

D. Lee's Evidentiary Challenges

Lee also challenges rulings by the trial court that excluded certain evidence he sought to introduce. We review such rulings "under an abuse-of-discretion standard," Boyce v. Soundview Technology Group, Inc., 464 F.3d 376, 385 (2d Cir. 2006), and "an evidentiary ruling will ordinarily not be disturbed unless it was 'manifestly erroneous,'" New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F.2d 1334, 1344 (2d Cir. 1985) (quoting Salem v. United States Lines Co., 370 U.S. 31, 35 (1962)). Further, even an evidentiary ruling that is erroneous will warrant a new trial only "if it also affects a party's substantial rights." Schering Corp. v. Pfizer Inc., 189 F.3d 218, 224 (2d Cir. 1999); see Fed. R. Evid. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . .").

We see no merit in Lee's evidentiary contentions, which do not require extended discussion. First, Lee attempted to impeach a witness by questioning him about an unrelated case in which the witness's testimony had been found--on appeal--to lack credibility. We see no abuse of discretion in the district court's decision pursuant to Fed. R. Evid. 403 to disallow that attempt on the ground that the probative value of such a credibility finding in a different case was substantially outweighed by the danger of unfair prejudice and confusion to the jury in the present case.

Second, Lee sought to introduce prior written statements by two other witnesses, including Herrera, that did not match their trial testimony. Although the trial court excluded the writings, Lee was allowed to cross-examine each witness extensively as to differences between his or her writings and his or her testimony. We cannot conclude that the district court's rulings were an abuse of discretion or that Lee's substantial rights were affected.

26

## CONCLUSION

We have considered all of Lee's arguments on this appeal and have found in them no basis for reversal. The judgment of conviction is affirmed.