*United States of America v. Cesiro*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of November, two thousand twenty-four.

Present:
>           DEBRA ANN LIVINGSTON,
>                 *Chief Judge*,
>           PIERRE N. LEVAL,
>           DENNY CHIN,
>                 *Circuit Judges*.

---

UNITED STATES OF AMERICA,

>           *Appellee*,

>     v.                                                             23-6649

THOMAS CESIRO,

>           *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | THOMAS R. SUTCLIFFE, Assistant United States Attorney *on behalf of* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY. |
| For Defendant-Appellee: | PETER E. BRILL (on the brief), DAVID GRAY, Brill Legal Group, P.C., Hempstead, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Thomas Cesiro appeals from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*), entered on June 6, 2023, upon a jury verdict, sentencing him principally to a 120-month term of imprisonment and a 10-year term of supervised release for attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). On appeal, Cesiro challenges: (1) the district court's denial of his motion for spoliation sanctions; and (2) the sufficiency of the evidence presented against him at trial.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Denial of Defendant's Motion for Spoliation Sanctions

A district court's decision regarding whether to sanction a party for spoliation of evidence is reviewed for abuse of discretion. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). We will reject the district court's factual findings in support of its decision only if they are clearly erroneous. *See United States v. Rahman*, 189 F.3d 88, 139 (2d Cir. 1999).

---

[1] While Cesiro also purports to challenge the sufficiency of the indictment against him, the thrust of his claim is that the Government "failed to assert at trial that Cesiro took concrete steps to engage in an[] attempt to violate the New York Penal Law." Dkt. 20 at 16. He does not argue that his indictment failed to meet the constitutional requirements imposed by the Fifth Amendment's Grand Jury Clause. *See United States v. Lee*, 833 F.3d 56, 69 (2d Cir. 2016) ("The Supreme Court has identified two constitutional requirements for an indictment: 'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' ") (internal citation omitted). Thus, we construe Cesiro's argument as a challenge to the sufficiency of the evidence presented at trial.

Cesiro argues that the district court erred in denying his motion for spoliation sanctions based on the Government's failure to preserve data from an online undercover account called "Dirtymommm" on the "FetLife" platform. We disagree. As a threshold matter, when a criminal defendant moves for sanctions on the basis of spoliation of evidence, "the record must first show that evidence has been lost and that this loss is 'chargeable to the State.' " *Id.* If this showing has been made, the defendant must then make a two-pronged showing that (1) the evidence possessed exculpatory value "that was apparent before [it] was destroyed," and that (2) it was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *see also United States v. Rastelli*, 870 F.2d 822, 833 (2d Cir. 1989). In addition, while *Brady v. Maryland*, 373 U.S. 83, 87 (1963), teaches that good or bad faith is irrelevant when the Government suppresses or fails to disclose material exculpatory evidence, when the Government has, instead, failed to preserve evidentiary material that is "potentially useful," such failure "does not violate due process 'unless a criminal defendant can show bad faith' " on the part of the Government. *Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). Failure to satisfy any of these requirements, including a failure to show the Government's bad faith, is fatal to a defendant's spoliation motion. *See Rastelli*, 870 F.2d at 833-34; *see also United States v. U.S. Currency in the Amount of $228,536.00*, 895 F.2d 908, 917 (2d Cir. 1990) (noting that "unless a defendant can show bad faith . . . destruction of potentially useful evidence is not a denial of due process").

Here, Cesiro failed to make the threshold showing that the loss of access to the FetLife profile was "chargeable to the State." *Rahman*, 189 F.3d at 139. The data in question was lost after FetLife, a third party with no relation to the Government, "terminated [the "Dirtymomm"]

3

account without warning and on its own initiative." Gov. App'x 4; *see Rahman*, 189 F.3d at 140 (holding that an informant's destruction of evidence was "not chargeable to the Government" in part because "[t]here is no indication that Government agents made any request or instruction to destroy any of the tapes"). The primary investigator, Detective Christopher Smith, attested that he "ha[s] no record of FetLife informing [him] that [his] account would or could be terminated." Gov. App'x 4. In fact, Detective Smith even "requested that FetLife reactivate this account" to no avail. *Id.* While Cesiro argues that the Government should have taken affirmative steps to preserve the data on the profile, perhaps by capturing earlier screenshots, he provides "no[] . . . substantive support for [the] argument that the failure to *collect* evidence could ground a due process claim in circumstances analogous to those here." *United States v. Greenberg*. 835 F.3d 295, 303 (2d Cir. 2016). Accordingly, the district court did not err in denying Cesiro's request for spoliation sanctions.

Even if the loss of the profile *was* chargeable to the State, the district court did not err in finding that Cesiro failed to satisfy the other three prerequisites for sanctions. First, Cesiro has not specified how the evidence on the profile possessed exculpatory value that was apparent before it was destroyed. While Cesiro claims that he could have used evidence from the profile to verify Detective Smith's testimony and to see whether there were other "innocent" interactions between the fictitious person who supposedly created the profile and other users, he ultimately concedes that he may only "speculat[e]" as to the potential exculpatory value of the data. Dkt. 20 at 12. Such speculation is insufficient. *See United States v. Walker*, 974 F.3d 193, 208 (2d Cir. 2020) (affirming denial of motion for new trial based on spoliation of video evidence because the defendant "d[id] not assert that he knows what the missing video footage contained, let alone that the missing footage was exculpatory"). Second, Cesiro has not shown that the Government acted

4

in bad faith by failing to preserve the profile. Cesiro's only argument is that the Government has not offered an explanation for why "Detective Smith failed to preserve the profile information at the time of the investigation[] despite having been trained to do so." Dkt. 20 at 12. However, as previously discussed, the Government was not involved in FetLife's decision to terminate the profile. Moreover, Detective Smith attested that he chose not to preserve information relating to his interactions with other FetLife users, as well as his membership in certain "groups" on the platform, because he "did not find this information to be relevant to the investigation involving [Cesiro]." Gov. App'x 3. These facts do not suggest bad faith. Finally, even if the Government had failed to preserve particular conversations between the "Dirtymomm" profile and Cesiro—which has not been established—Cesiro has not shown that he was unable to obtain such conversations through other reasonably available means. In particular, Cesiro does not appear to dispute that he retained access to his still-active FetLife profile where such conversations would be available. *See* Dkt. 20 at 11.

Each of the aforementioned grounds provides an independently sufficient basis for denying Cesiro's motion. Accordingly, we affirm the district court's denial of Cesiro's motion for spoliation sanctions.

## II.   Sufficiency of Evidence

Cesiro also challenges the sufficiency of the evidence supporting his criminal conviction. A defendant mounting such a challenge bears "a heavy burden." *United States v. Tran*, 519 F.3d 98, 105 (2d Cir. 2008). When presented with a sufficiency-of-the-evidence challenge, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Carlo*, 507 F.3d

5

799, 801 (2d Cir. 2007) ("On an appeal challenging the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor . . . ."). Notably, when a defendant moves for a judgment of acquittal on specific grounds and then subsequently raises new arguments on appeal, we review the new claims for plain error. *United States v. Delano*, 55 F.3d 720, 726 (2d Cir. 1995) (reviewing a defendant's claim for plain error because the defendant, in his initial Rule 29 motion, "stated a ground different from what he now urges on appeal").

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Cesiro's conduct satisfied the essential elements of the crime he was charged with beyond a reasonable doubt. "To establish enticement under § 2422(b), the Government must prove four elements: that an individual (i) used a facility of interstate commerce; (ii) to knowingly persuade, induce or entice, or to attempt to persuade, induce or entice; (iii) any individual who is younger than eighteen-years old; (iv) to engage in sexual activity of a criminal nature." *United States v. Brand*, 467 F.3d 179, 201–02 (2d Cir. 2006), *abrogated on other grounds by United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021). Cesiro challenges the sufficiency of the evidence in two respects, arguing that (1) he did not believe that "Kayla," the undercover persona he was accused of enticing, was actually a minor; and (2) his conduct did not constitute a criminal offense in the State of New York, as the indictment charged, because he was arrested in Vermont and never entered New York.[2]

---

[2] While Cesiro also appears to raise a defense of entrapment, he is precluded from doing so because he failed to raise the defense at trial. *United States v. Myers*, 692 F.2d 823, 836 (2d Cir. 1982) ("[A] defendant who fails to assert entrapment as a factual defense at his trial, cannot assert it as a legal defense to his conviction.").

Neither argument is availing.  The Government has presented ample evidence that Cesiro believed Kayla was a minor when he made plans to meet with her in Menands, New York.  On a phone call with "Hayley," the undercover persona that was purportedly Kayla's mother, he asked Hayley to clarify Kayla's age.  After Hayley confirmed Kayla was 12 years old, Cesiro reiterated his desire to have sex with Kayla.  Gov. App'x 88 Ex. 11 at 9:15-9:25.  After his arrest, Cesiro told investigators that Kayla was "12, 14, [or] 15" years old.  Gov. App'x 88 Ex. 17 at 9:03-9:13.  A jury could reasonably have concluded that, based on this evidence, Cesiro knowingly tried to entice someone whom he believed to be younger than eighteen years old to engage in sexual activity.

The Government also presented evidence showing that Cesiro attempted to engage in conduct that, if successful, would have violated the New York Penal Code.  "We have emphasized that a conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion."  *United States v. Douglas*, 626 F.3d 161, 164 (2d Cir. 2010) (internal quotations omitted).  "In order to establish that a defendant is guilty of an attempt to commit a crime, the government must prove that the defendant had the intent to commit the crime and engaged in conduct amounting to a 'substantial step' towards the commission of the crime."  *United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003) (quoting *United States v. Rosa*, 11 F.3d 315, 337 (2d Cir. 1993)).  "A substantial step must be something more than mere preparation . . . ."  *United States v. Manley*, 632 F.2d 978, 987 (2d Cir. 1980).  The step "must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute."  *Id.* at 987–88.

Here, Cesiro took a substantial step towards violating the New York statutes in question when he arranged to meet with Kayla and Hayley at their residence in Menands, New York on October 20, 2020. In particular, the Government introduced evidence that Cesiro and Hayley orally agreed to meet at Hayley and Kayla's residence in New York. Gov. App'x Ex. 7 at 9:24-10:52. Hayley later texted Cesiro an address in Menands, New York. Gov. App'x 60. Prior to making plans to meet up, Cesiro had described in detail the various sexual acts he wanted to perform on or with Kayla, including digital penetration, oral and anal sex, manual stimulation and oral sex on him, and had referenced having Hayley watch Kayla "lose her cherry to me." Gov. App'x 20-23, 34, 45, 53, 54, 67. He additionally mentioned a list of items he planned to use on Hayley and Kayla, including sugar, a Disney-themed toothbrush, paintbrushes, a wooden spoon, rope, and anal beads. App'x 273; Gov. App'x 55-56. Investigators found all of these items in Cesiro's car after his arrest, as well as handwritten directions to the Menands, New York address. App'x 400-04, 407, 409. Cesiro himself admitted that the "original[]" plan was for him to go to New York. App'x 470. The fact that Cesiro traveled to, and was arrested in, Bennington, Vermont after a last-minute change to the meeting plans only further demonstrates that Cesiro intended to meet with Hayley and Kayla to engage in sexual conduct prohibited under New York law.

\* \* \*

We have considered Cesiro's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of conviction below.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8